Vernon R. BECK, an Individual, and Vernon R. Beck, as representative of a class, Appellants,

v.

FIRST NATIONAL BANK OF MINNEAPOLIS, Respondent.

No. 48202.

Supreme Court of Minnesota.

Aug. 25, 1978.

---

David K. Hackley, Minneapolis, for appellants.

Richard A. Nordbye, Minneapolis, for respondent.

Heard before TODD, YETKA, and SCOTT, JJ., and considered and decided by the court en banc.

SCOTT, Justice.

This is an appeal by plaintiff Vernon R. Beck from a judgment entered pursuant to an order of the district court granting the motion of defendant First National Bank of Minneapolis (Bank) for summary judgment and denying plaintiff's motion for summary judgment in an action for usury under the National Bank Act, 12 U.S.C. §§ 85, 86. We affirm.

Since September 1967, plaintiff Beck and defendant Bank have been parties to a "checking-plus" agreement. The agreement was last renewed in writing in March of 1974. Pursuant to this agreement, the

Bank authorized plaintiff to create overdrafts in his checking account up to $3,000 at any one time. The overdrafts were treated as loans to be repaid in monthly installments, at the rate of 10.62 percent per annum on unpaid balances.[1] The installment payments were deducted automatically from plaintiff's checking account, and the amount of each payment varied in accordance with the amount of the outstanding principal balances of all the loans. The "checking plus" agreement stated that the rate of 10.62 percent per annum (.885 percent per month) on the daily principal balances was being charged pursuant to Minn.St.1974, § 48.153.

In 1976, the Minnesota Legislature enacted L.1976, c. 196, § 5, codified at Minn.St. 48.185, which specifically deals with overdraft checking plans such as the Bank's "checking-plus" arrangement. This new law sets the interest rate for such plans, effective April 9, 1976, at 12 percent (1 percent per month). Minn.St. 48.185 provides in part:

"Subdivision 1. Any bank organized under the laws of this state, any national banking association doing business in this state, and any savings bank organized and operated pursuant to chapter 50, may extend credit through an open end loan account arrangement with a debtor, pursuant to which the debtor may obtain loans from time to time by cash advances, purchase or satisfaction of the obligations of the debtor incurred pursuant to a credit card plan, or otherwise under a credit card or overdraft checking plan.

"Subd. 2. No bank shall extend credit which would cause the total outstanding balance of the debtor on accounts created pursuant to the authority of this section to exceed $7,500. * * *.

"Subd. 3. A bank or savings bank may collect a periodic rate of finance charge in connection with extensions of credit pursuant to this section, which rate does not exceed one percent per month computed on an amount no greater than the average daily balance of the account during each monthly billing cycle. If the billing cycle is other than monthly, the maximum finance charge for that billing cycle shall be that percentage which bears the same relation to one percent as the number of days in the billing cycle bears to 30.

"Subd. 4. No charges other than those provided for in subdivision 3 shall be made directly or indirectly for any credit extended under the authority of this section, except [certain exceptions not relevant to this case] * * *.
             * * * "

On August 25, 1976, the Bank sent a letter to its "checking-plus" customers, including plaintiff, advising the customers that effective October 1, 1976, the interest rate would be increased to 11.75 percent per annum. The Bank further requested its "checking-plus" customers to sign a new enclosed Checking Plus Agreement which incorporated the change in interest rate. In addition, the Bank enclosed the following notice with its customers' September 1976 bank statements:

### "SPECIAL NOTICE

"As previously announced, we are raising the interest rate on all Checking Plus accounts to 11.75% annually, effective October 1, 1976. You presently have a Checking Plus loan on which you are paying 10.62% annually. Because of limitations in our Computer System we are unable to maintain your present loan balance at the old rate while offering you additional borrowing at the new rate.

"This new rate will apply to your present balance beginning October 1, and you will continue to enjoy the convenience of being able to write yourself a loan and the benefit of free checking with no minimum balance. However, if this is unacceptable, we can charge the old rate on your account, but we would have to discontinue your Checking Plus service.

---

1. The 10.62 percent on unpaid balances does not exceed the "six percent per annum upon the total amount of the loan" then authorized by Minn.St.1974, § 48.153, and there is no claim to the contrary.

"If you wish to discontinue your Checking Plus service and pay off the present balance at the old rate, please inform your Personal Banker or call 370–4860.

"Thank you for your attention in this matter. We look forward to continuing to serve you.

First National Bank of Minneapolis."

Plaintiff neither signed the new Checking Plus Agreement nor advised the Bank that he wanted to pay off his September 30, 1976, balance at the 10.62 percent rate. As of September 30, 1976, plaintiff's total "checking-plus" indebtedness to the Bank was $2,489.28—$2,464.26 of which represented the unpaid principal balance for "checking-plus" loans and $25.02 of which was the September finance charge at the 10.62 percent per annum rate.

After October 1, 1976, plaintiff continued to write checks in excess of his checking account balance and the Bank made advances totaling $610 in October and November. In accordance with the notice sent with the September 1976 bank statement, the bank statements for October, November and December 1976 reflected that the new rate of 11.75 percent was applied to the September 30, 1976, balance of $2,464.26 and the new "checking-plus" loans of $610. The interest charged plaintiff was $28.49 in October, $27.17 in November, and $28.37 in December.

On February 8, 1977, plaintiff brought the present action, on behalf of himself individually and as a representative of a class, against the Bank. He alleged that the Bank violated the National Bank Act, 12 U.S.C., § 85, by requiring interest on the September 30, 1976, indebtedness at the rate of 11.75 percent per annum as a condition of and part of the consideration for continuing checking-plus credit to plaintiff and for making the additional loans to plaintiff at a rate in excess of the 12 percent per annum permitted by Minn.St. 48.-185. Plaintiff claimed damages pursuant to the National Bank Act, 12 U.S.C., § 86.

Upon motions for summary judgment, the district court found that plaintiff's complaint failed to state a cause of action because "[t]he plaintiff has brought his action before it is possible to prove the taking of illegal interest." The plaintiff's motion for summary judgment was denied and the Bank's motion for summary judgment was granted.

The following legal issues are presented on appeal:

(1) Did the district court err in finding that plaintiff brought his action before it accrued?

(2) Did the Bank charge a rate of interest in excess of that permitted by the National Bank Act, 12 U.S.C., § 85?

■ 1. In determining that plaintiff's complaint failed to state a cause of action, the district court stated that "[u]ntil the Checking Plus debt is paid or the plaintiff tenders a payment as interest and it is accepted as such by the Bank, it cannot be determined to what extent interest has been paid." The controlling statute with respect to this issue is contained in 12 U.S.C., § 86, as follows:

"The *taking, receiving, reserving,* or *charging* a rate of interest greater than is allowed by the preceding section, when knowingly done, shall be deemed a forfeiture of the entire interest which the note, bill, or other evidence of debt carries with it, or which has been agreed to be paid thereon. In case the greater rate of interest has been *paid,* the person by whom it has been *paid* * * * may recover back * * * twice the amount of the interest thus paid from the association taking or receiving the same * * *." (Italics supplied.)

Section 86 thus provides for two penalties, both of which are claimed by plaintiff. The first sentence provides for the forfeiture of all the interest on the debt when usurious interest is taken, received, reserved or charged. The second sentence provides for a penalty of twice the amount of the usurious interest paid. A distinction thus is made between interest taken, re-

ceived, reserved, or charged and interest paid.[2]

It is clear that the Bank "charged" the plaintiff interest and thus the forfeiture penalty should be made available to plaintiff upon a showing that the interest charged was usurious. In answers to interrogatories, the Bank admitted that it charged interest for the months of October 1976 through February 1977 at a rate of 11.75 percent and flatly stated that it "intended to charge 11.75%." Furthermore, the Bank does not contend that interest was not "charged." Instead, the Bank concentrates its arguments on whether interest was "paid."

The Bank contends that until the principal indebtedness is paid, no determination can be made as to what interest had been paid by plaintiff. It cites *McBroom v. Scottish Investment Co.*, 153 U.S. 318, 14 S.Ct. 852, 38 L.Ed. 729 (1894), in which the Court construed a New Mexico statute which provided for misdemeanor penalties for anyone who "charged, collected, or received" more than 12 percent interest per annum and which provided for the forfeiture of double the amount so "collected or received." The Court stated:

"The contract of loan not being void, except as to the excess of interest stipulated to be paid, the question arises whether the lender is liable to an action for the penalty prescribed by the statute, so long as the principal debt, with legal interest thereon, after deducting all payments, is unpaid. We are of the opinion that this question must be answered in the negative. While, under the statute, the mere *charging* of usurious interest may be a misdemeanor for which the lender can be fined, whether such usurious interest is or is not collected or received, the borrower has no cause of action until usurious interest has been actually collected or received from him. * * And interest cannot be said to have been collected and received, in excess of what

may be lawfully collected and received, until the lender has, in fact,—after giving credits for all payments,—collected and received more than the sum loaned, with legal interest." 153 U.S. 328, 14 S.Ct. 856, 38 L.Ed. 733. (Emphasis original.)

Plaintiff, on the other hand, cites *McCarthy v. First National Bank*, 223 U.S. 493, 32 S.Ct. 240, 56 L.Ed. 523 (1912), which dealt with an attempt to recover twice the amount of "interest paid" under the predecessor of 12 U.S.C., § 86. The Court noted:

"* * * Banks may make ordinary loans and charge interest to be collected at the maturity of the note. But, as they usually reserve and deduct it in advance, by way of discount, the statute is framed so as to apply to cases where the interest is paid by the debtor as well as to those in which it is reserved by the bank. These deductions by way of discount are not treated as payments. They do not come out of the debtor's pocket, though they lessen the amount which he receives when the loan is made, and when sued he may plead usury and escape liability for the amount thus charged or retained. *But, such reservation by the bank, not being a payment made by the debtor, he, of course, cannot avail himself of the right to maintain a suit given only to those who have paid interest.*

"*But when the debtor actually makes a payment, as interest, and the bank knowingly receives and appropriates it as such, the usurious transaction is complete, the right of the one and the liability of the other is fixed, the cause of action arises, and the statute of limitations begins to run. There is no locus penitentioe.* That privilege is only granted to those banks which, having charged usury, may, by a refusal to accept interest when tendered, show that they will not carry the illegal contract into execution, and thus escape the two-fold penalty." 223 U.S. 499–500, 32 S.Ct. 241, 56 L.Ed. 526. (Italics supplied.)

2. The district court dismissed plaintiff's claims under both provisions of Section 86. Yet it never reached the issue under the first sentence of Section 86 regarding whether interest had been "charged." The court's decision to dismiss plaintiff's entire action thus was improper.

See, also, *First National Bank in Mena v. Nowlin*, 509 F.2d 872 (8 Cir. 1975); *Daniel v. First National Bank of Birmingham*, 228 F.2d 803 (5 Cir. 1956). The Court went on to distinguish *McBroom, supra*, on the basis that the state statute construed in that case differed from the Federal statute being construed in *McCarthy*. The relevant law to be applied in this case thus is contained in *McCarthy*.

According to *McCarthy*, when a debtor makes an actual interest payment and the bank knowingly receives it as interest, the cause of action accrues and the bank loses its locus penitentioe right—the right not to treat the payment as interest. Applying this rule to the present case, it appears that the plaintiff has in fact paid interest and that the Bank knowingly received it as such. For each month in question, plaintiff's bank statement listed a finance charge which included interest and the Bank deducted the interest charges from plaintiff's account. In addition, each monthly automatic installment payment was applied by the Bank first to liquidate the finance charge recorded the last day of the preceding month and then applied to reduce the principal balance. Thus, the *McCarthy* test has been met by plaintiff with the result that plaintiff's cause of action has accrued.

The Bank's final contention with respect to this issue is that plaintiff paid no interest out of his own funds since the funds used to make the interest payments came from borrowed amounts advanced by the Bank pursuant to the checking-plus agreement. This argument fails to recognize that borrowed funds become the property of the borrower, who is free to use such funds for his own purposes. This is the essential nature of any loan transaction.

For these reasons we hold that plaintiff's cause of action pursuant to both provisions of Section 86 has accrued.

■ 2. We next consider plaintiff's contention that these Section 86 remedies are available since the interest rate charged by the Bank was allegedly in excess of that permitted by the National Bank Act, 12 U.S.C., § 85, which provides in part:

"Any association may take, receive, reserve, and charge on any loan * * * interest at the rate allowed by the laws of the State * * * where the bank is located * * * and no more * *."

The purpose of Section 85 is to prohibit states from discriminating against national banks in favor of local financial institutions and was intended to place "national banks on an equal footing with the most favored lenders in the state without giving them an unconscionable and destructive advantage over all state lenders." E. g., *First National Bank in Mena v. Nowlin*, 509 F.2d 872, 880 (8 Cir. 1975). National banks thus may charge interest at the highest rate permitted by state law to any competing state-chartered lending institution. E. g., 12 C.F.R., § 7.7310.

■ Plaintiff alleges that Section 85 was violated by the Bank in several ways. First, plaintiff claims that by raising the rate from 10.62 percent to 11.75 percent and applying the new rate to plaintiff's September 30 balance the Bank charged and plaintiff paid a rate of interest which would have been unlawful when the loans were originally made. He also argues that the new rate authorized by Minn.St. 48.185 cannot be applied to the September 30 balance, since the loans represented by that balance were expressly made pursuant to Minn.St. 1974, § 48.153, and the new rate is applicable only to "extensions of credit pursuant" to Minn.St. 48.185. He further contends that since the loans made after September 30 were conditioned on an increase in interest to be paid on the September 30 balance, the interest on the balance was in effect additional interest on the new loans, making them usurious as well. In this regard, the district court found that "[t]he extra 1.13% on the September 30, 1976 balance owed by plaintiff when added to the 11.75% rate charged on the $610.00 advanced since October 1, 1976, would create a combined interest rate of interest in excess of 12% on the $610.00 advances."

We have thoroughly studied plaintiff's contentions in this regard and find them without merit for the following reasons: The checking-plus agreement between plaintiff and the Bank provided that it could be terminated by either party at any time by "giving written notice to that effect to the other party." The Bank's September notice to plaintiff was in effect a notice of termination of the checking-plus agreement coupled with an offer to continue the present service at a new rate, pursuant to the new law, to be applied on both the balance outstanding on October 1 and any future advances. By writing new overdrafts, plaintiff accepted this offer and thus refinanced his existing balance under the new arrangement and the new law. At the time the existing balance was refinanced in October, Minn.St. 48.185, which authorized a 12 percent rate of interest, was fully effective. Consequently, the 11.75% rate applied to both the refinanced amount (equal to the September 30 balance) and the new loans was authorized by Minn.St. 48.-185 and both constituted "extensions of credit pursuant to" the same statute. The Bank's charge of 11.75 percent interest therefore was not usurious under Minnesota law nor in violation of the National Bank Act, 12 U.S.C., § 85.

We affirm the district court's granting of defendant's motion for summary judgment and denying of plaintiff's motion for the same, on the grounds stated in this opinion. The issues regarding the class action thus need not be considered.

Affirmed.

OTIS, J., took no part in the consideration or decision of this case.