SHELDON GARBER *et al.*, Plaintiffs-Appellants, *v.* HARRIS TRUST & SAVINGS BANK *et al.*, Defendants-Appellees.

First District (3rd Division)    No. 80-2290

Opinion filed March 3, 1982.

Larry D. Drury, Ltd., of Chicago, for appellants.

John F. McClure and Richard C. Gering, both of Arnstein, Gluck & Lehr, of Chicago, for appellee Sears Roebuck & Company.

Keehn Landis, of Chapman and Cutler, of Chicago, for appellee Harris Trust & Savings Bank.

*Mayer, Brown & Platt,* of Chicago (Robert L. Geltzer and Joseph C. Kaplan, of counsel), for appellee J. C. Penney Co., Inc.

H. Blair White, Charles W. Douglas, and Michael C. Cook, all of Sidley & Austin, of Chicago, for appellee First National Bank of Chicago.

PRESIDING JUSTICE WHITE delivered the opinion of the court:

Plaintiffs, Gary L. Blank and Sheldon Garber, purporting to represent a class of credit cardholders, brought this action in chancery against defendants Harris Trust and Savings Bank (Harris Trust), Sears Roebuck and Co. (Sears), J. C. Penney Co., Inc. (Penney), and First National Bank of Chicago (FNB). The amended complaint alleges that Blank is the holder of credit cards issued by the defendants Sears, Penney and FNB. It also alleges that Garber is the holder of Master Charge credit cards issued by Harris Trust. In essence, the amended complaint asserts that each defendant had breached the provisions of its "cardholder agreement" document by changing the terms on which that defendant would offer to extend credit and that the alleged changes in the cardholder agreements were void for lack of consideration. These cardholder agreements are alleged to be contracts. In their prayer for relief, plaintiffs sought injunctive relief against the changes, money damages, and other relief. Defendants moved to dismiss the amended complaint. After hearing oral argument, the circuit court entered an order granting the motions to dismiss and dismissing the cause of action with prejudice. Plaintiffs appeal from this order.

The alleged modifications of the cardholder agreements at issue are as follows. In spring 1980, FNB announced that, effective July 1, 1980, it would begin charging a $20 annual fee for its VISA cards and would increase the minimum monthly payment from four % to five % on the outstanding balance in any VISA account. The changed terms only became effective if cardholders used their cards after June 30, 1980. Penney allegedly breached its cardholder agreement by initiating a policy whereby finance charges on future purchases would be assessed against a cardholder from the date of each purchase, regardless of the date on which he was billed. This policy allegedly modified provisions of the original Penney cardholder agreement which provided that a finance charge would be assessed against a cardholder from the date on which he was billed. The alleged modifications by Sears arose out of two notices which Sears sent to its cardholders. The first notice was sent to cardholders in January 1980, and it advised them of a change in the method of computing finance charges which took effect in March 1980. Pursuant to this change, purchases, payments and credits to a cardholder's account

during the current monthly billing period would be included in the computation of each day's average daily balance, a figure used to compute finance charges. The notice gave the cardholder the options of discontinuing the use of his Sears credit privileges after the effective date of the change or of continuing to use his card, thereby accepting the proposed change. The second notice, sent to Sears cardholders in May 1980, advised them of a change (increase) in the minimum monthly payment schedule which took effect in July, 1980. This notice gave the cardholder similar options. The new schedule of minimum payments would apply to previous balances as well as to future purchases, if the card was used after this modification. The alleged modification complained of with respect to Harris Trust was that Harris had notified its cardholders that after May 1980, Harris would impose an annual fee upon the use of its card. This notice also informed cardholders that the changes announced would become effective after June 4, 1980, assuming that the cardholder uses his account on or after that date.

Plaintiffs assert that the cardholder agreements between the defendant credit card issuers and the plaintiff credit cardholders are binding contracts to continue to extend credit on the same terms and that there was no consideration to support the alleged modifications since a promise to do something which one is already obligated to do, *i.e.*, to extend credit, does not constitute a valid consideration. Plaintiffs find the existence of a contract in the following manner. The applications and brochures, displayed and advertised by defendants, are invitations for an offer. The credit application submitted by a potential cardholder to one of the defendant credit card issuers constitutes an offer. Acceptance of this offer occurs when the issuer issues a credit card to the cardholder. A cardholder furnishes consideration to the issuer by providing the issuer with requested credit information and by allowing the issuer to commence a credit check prior to the issuance of the card.

Conversely, the card issuers argue that the issuance of a card constitutes an offer to extend credit, and that offer is accepted by use of the card. Upon such use, the cardholder agrees to all provisions in the cardholder agreement, and the agreement becomes a binding contract between the cardholder and the issuer. In other words, each use of the credit card constitutes a separate contract between the parties.

For the reasons stated below, we conclude that a contract was not formed at the time of the issuance of the credit card; that a separate contract is created each time the card is used according to the terms of the cardholder agreement at the time of such use; that the cardholder agreements were subject to modification at will; and that in any event, consideration was given for the modifications.

Although the parties do not refer us to any Illinois cases to support the position that cardholder agreements are standing offers to extend credit, support for this position is found in the case law of other jurisdictions. In *City Stores Co. v. Henderson* (1967), 116 Ga. App. 114, 156 S.E.2d 818, plaintiffs brought an action for tortious misconduct based upon an alleged refusal, without prior notice of credit revocation, of defendant's clerk to extend further credit to one of the plaintiffs when she sought to charge purchases made at its store. In discussing the nature of the relationship between a cardholder and the issuer of the card, the court stated:

> "The issuance of a credit card is but an offer to extend a line of open account credit. It is unilateral and supported by no consideration. The offer may be withdrawn at any time, without prior notice, for any reason or, indeed, for no reason at all, and its withdrawal breaches no duty—for there is no duty to continue it—and violates no rights. Acceptance or use of the card by the offeree makes a contract between the parties according to its terms, but we have seen none which prevents a termination of the arrangement at any time by either party." (116 Ga. App. 114, 120-21, 156 S.E.2d 818, 823.)

This language was quoted with approval in *Novack v. Cities Service Oil Co.* (1977), 149 N.J.Super. 542, 548, 374 A.2d 89, 92, *affirmed* (1978), 159 N.J.Super. 400, 388 A.2d 264. (See also 50 Am. Jur. 2d *Letters of Credit* §38 (1970).) In *Novack*, the plaintiff's complaint alleged, in part, a cause of action grounded in contract for the allegedly wrongful termination of his Cities Service credit card. His argument was that defendant, by cancelling plaintiff's credit card without notice and contrary to established intercompany procedures, breached an express term of the contract between them. In finding as a matter of law that no contractual relationship was created by the issuance and receipt of the credit card, the court stated:

> "The conclusion that the issuance of a credit card does not create a contract includes an analysis of the concept of consideration. It is well settled that to be enforceable a contract must be supported by valuable consideration. [Citations.] Consideration involves a detriment incurred by the promisee or a benefit received by the promisor, at the promisor's request. In the credit card relationship, neither status is created. The holder of the card (promisee) is free to cancel or not use it, and has gratuitously received an opportunity to purchase without incurring any detriment. Additionally, there does not appear to be any benefit bargained for or received by the issuing company (promisor). Lacking consideration, the credit card account is, as stated in *City Stores*, a continuing offer to

purchase which may be withdrawn by either party at any time." 149 N.J. Super. 542, 548-49, 374 A.2d 89, 92.

■■ Thus the prevailing view in this country is that the issuance of a credit card is only an offer to extend credit. There is no persuasive reason, under the circumstances presented in the instant appeal, for swaying from the accepted position that the issuance of a credit card does not create a contract. We therefore conclude that defendant credit card issuers could terminate or modify the terms of their offers to extend credit as to future transactions. Once a credit card issuer withdraws its offer, a cardholder cannot compel it to extend credit to him in accordance with the terms of that offer.

Plaintiff relies primarily upon *Steinberg v. Chicago Medical School* (1977), 69 Ill. 2d 320, 371 N.E.2d 634, as support for his theory that a contract is formed at the time of issuance of a credit card. In *Steinberg*, the plaintiff received a catalog and submitted an application and fee to the defendant medical school. He was rejected. He then filed a class action against the school alleging that the school failed to evaluate his application and those of other applicants according to the academic criteria in the school's catalog. The supreme court held that the allegations of the complaint stated a cause of action for breach of a contract to appraise applicants according to those criteria. The court concluded that the tender of the application and payment of the fee was an offer to apply; that acceptance of the application and fee constituted acceptance of an offer to apply under the established criteria; and that the application fee was sufficient consideration to support the agreement between the applicant and the school. *Steinberg* might be applicable if plaintiffs had alleged that the card issuers evaluated their applications for credit in a manner contrary to that set forth in the credit application. However, that is not the case. The case at bar involves modifications of the terms of offers to extend credit. *Steinberg* involved no such modifications and is therefore inapposite.

Defendants-appellees make other convincing arguments in support of the decision of the circuit court.

■■ First, an argument was made that even if the parties to the cardholder agreement had intended it to be a contract, the agreement would be unenforceable for want of mutuality of obligation. Mutuality of obligation is not essential to the validity of a contract. However, where there is no other consideration for a contract, the mutual promises of the parties constitute the consideration, and these promises must be binding on both parties or the contract fails for want of consideration. (*Armstrong Paint & Varnish Works v. Continental Can Co.* (1921), 301 Ill. 102, 108, 133 N.E. 711; *Higbie v. Rust* (1904), 211 Ill. 333, 337, 71 N.E. 1010; *Gardiakos v.*

*Vanguard Communications, Inc.* (1976), 38 Ill. App. 3d 937, 939, 350 N.E.2d 210.) If there is any other consideration for the contract, mutuality of obligation is not essential. (*Armstrong Paint & Varnish Works v. Continental Can Co.* (1921), 301 Ill. 102, 108.) Here, the cardholder plaintiffs did not give consideration for the alleged promise to extend credit in the future.[1] Their argument that providing requested credit information and allowing the issuer to commence a credit check constitutes consideration is unpersuasive. For a performance or a return promise to constitute consideration, it must be bargained for. "A performance or return promise is bargained for if it is sought by the promisor in exchange for his promise and is given by the promisee in exchange for that promise." (Restatement (Second) of Contracts §71 (1981); 17 C.J.S. *Contracts* §74 (1963).) The act which constitutes the consideration generally must be at the instance of the promisor, and must be regarded by the parties as consideration. (17 C.J.S. *Contracts* §74 (1963); see *Bartlett v. Lauff* (1933), 271 Ill. App. 551, 555-56.) Even assuming that defendant credit-card issuers promised to extend credit forever on fixed terms, no persuasive argument can be made that defendant issuers made such a promise in exchange for the cardholder's disclosure of this credit history and his grant of permission for a credit check. In other words, such a performance by the cardholder was not sought by the issuer in exchange for an alleged promise to extend credit forever on fixed terms. Since we find no other consideration for the alleged contract, mutuality of obligation is essential.

■■ Mutuality of obligation is lacking. Such mutuality exists when both parties to an agreement are bound. If both are not, then neither is bound. (*Kraftco Corp. v. Koblus* (1971), 1 Ill. App. 3d 635, 638, 274 N.E.2d 153.) "Mutuality of obligation is lacking, and neither party is bound to an executory contract where one of the parties has the right to arbitrarily terminate it." (*Gardiakos*, 38 Ill. App. 3d 937, 939.) Under the cardholder agreements before this court, no obligation was imposed upon plaintiff cardholders until or unless a credit purchase was made, and they were under no obligation to make any purchase at any time. (See *Streich v. General Motors Corp.* (1955), 5 Ill. App. 2d 485, 126 N.E.2d 389.) We conclude that at the time of issuance of the credit cards, the cardholder agreements lacked mutuality of obligation. Thus, no valid enforceable contract came into existence at that time.

■■ Secondly, an argument is made that even assuming that the cardholder agreement constitutes a contract, that contract is for an indefinite duration, and therefore, modifiable at the will of either party. This

---

[1] We note that there is no allegation that either plaintiff paid a fee for the issuance of his credit card(s) prior to the alleged modification.

argument has particular application to the credit cards issued by defendants Sears and Penney.[2] "Where no definite time is fixed during which an executory contract shall continue in force it is terminable at the will of either party." (*Gage v. Village of Wilmette* (1924), 315 Ill. 328, 331, 146 N.E. 325; *Steinberg v. Keepper-Nagel Real Estate Investments, Inc.* (1973), 14 Ill. App. 3d 619, 622, 303 N.E.2d 46; *Kraftco Corp. v. Koblus* (1971), 1 Ill. App. 3d 635, 640.) Since the Sears and Penny cardholder agreements were of indefinite duration, if they constituted contracts, they were terminable at will. A contract terminable at the will of either party can be modified at any time by either party as a condition of its continuance (*Swalley v. Addressograph Multigraph Corp.* (7th Cir. 1946), 158 F.2d 51, 54, *cert. denied* 330 U.S. 845, 91 L. Ed. 1290, 67 S. Ct. 1086; see also *Gebhard v. Royce Aluminum Corp.* (1st Cir. 1961), 296 F.2d 17, 19; *Flint v. Youngstown Sheet & Tube Co.* (2d Cir. 1944), 143 F.2d 923, 925), and therefore, the cardholder agreements in question could be so modified. Thus, to the extent that the cardholder agreements were executory, they could be modified by either party. The defendant retail credit card issuers, in changing the terms governing card use, were merely exercising that right.

■■ Thirdly, defendants FNB, Harris Trust and Penney argue that the challenged modifications were expressly allowed by provisions in their cardholder agreements. FNB points to "change of terms" and "cancellation" provisions in its current cardholder agreement. Respectively, these provisions provide that FNB can change the terms of the agreement if a notice requirement specified in the agreement is satisfied and that FNB can cancel a cardholder's account, refuse to allow further transactions, or revoke the credit cards at any time. The cardholder agreement also provides for cancellation by the cardholder. FNB also notes that its cardholder agreements contained these or similar provisions prior to the time it allegedly issued a card to plaintiff Blank. Penney refers us to the application and agreement which plaintiff Blank signed and submitted to it. That agreement expressly provides that Penney has the right to amend the agreement with respect to future purchases and to limit or terminate the cardholder's credit card privileges as to future purchases. Harris Trust points to a provision in its cardholder agreement which provides that either the financial institution or the cardholder may terminate this agreement and revoke the card at any time as to advances or loans after

---

[2] There is no dispute that defendant retail stores do not have any termination date on their credit cards. Plaintiffs argued below that defendant banks have a definite date of termination on their credit cards. An affidavit by Culver Floyd of Harris Trust indicates that its cards bear an expiration date. The record is not clear as to FNB. Since we find other adequate grounds to sustain the ruling of the circuit court as to these two defendants, we do not address this issue as to them. We note that with regard to these defendants the existence of an expiration date does not mean that the agreement must continue to that date.

such termination. Plaintiffs do not dispute that the agreements containing these provisions are the agreements governing this case.

■■ Assuming again that the cardholder agreements themselves constitute a contract between card issuer and cardholder, we conclude that the cardholder agreements were terminable at will by virtue of their cancellation provisions, and therefore, that the agreements could be modified at any time as to future transactions. "Contractual provisions providing for termination of an agreement are generally enforceable according to their terms." (*S & F Corp. v. American Express Co.* (1978), 60 Ill. App. 3d 824, 829, 377 N.E.2d 73.) As stated in *Brown v. Federal Life Ins. Co.* (1933), 353 Ill. 541, 187 N.E. 484:

> "Parties to a contract may cancel it at any time by mutual consent, and there is no reason why they may not agree in advance that the contract made by them shall cease to be binding at any time, at the option of either or both of them, if there is, in fact, a valid contract made by them." (353 Ill. 541, 545.)

Thus, the cardholder agreements in question were terminable at the will of the card issuer. Following the reasoning above with respect to contracts of indefinite duration, we conclude that the cardholder agreements of FNB, Harris Trust and Penney, if contracts, could be modified at any time by the card issuers as a condition of continuance.[3] See *Swalley v. Addressograph Multigraph Corp.* (7th Cir. 1946), 158 F.2d 51, 54, and cases cited above.

The cardholder agreements of FNB and Penney discussed under this point, as noted, also contained "change of terms" provisions. These provisions merely express what the card issuer has the right to by virtue of the agreement being terminable at will. We see no good reason why such provisions should not be enforced according to their terms, assuming the existence of a valid contract.

Furthermore, assuming that the cardholder agreements are contracts, we conclude that the modifications of those agreements by these credit card issuers were supported by valid consideration. Since the cardholder agreements are terminable at will, the card issuers were under no obligation to extend credit in the future. "Any act or promise which is of benefit to one party or disadvantage to the other is a sufficient consideration to support a contract." (*Steinberg v. Chicago Medical School* (1977), 69 Ill. 2d 320, 330, 371 N.E.2d 634.) By extending credit on new terms, the card issuers gave consideration for the modified agreements.

The modifications made by FNB and Sears may have a retroactive impact on previously vested credit balances of cardholders, depending upon whether or not the cardholder uses his card after the effective date

---

[3] The Sears cardholder agreement also contained a provision for change of terms and cancellation, but Sears made no argument in its brief based on that provision.

of the modification. The modifications only took effect if the cardholder used his card after that date. As noted above, case law from other jurisdictions provides that use of the card by the cardholder makes a contract between the cardholder and the issuer. Thus, any retroactive impact of these modifications on previous vested credit balances would affect valid contracts between the parties. However, the extension of credit after the effective date of the change would be consideration for such modification.

■■ *Beck v. First National Bank* (Minn. 1978), 270 N.W.2d 281, is instructive. That case involved an action for usury under the National Bank Act. The plaintiff and the defendant bank were parties to a "checking-plus" agreement. Pursuant to that agreement, the bank authorized the plaintiff to create overdrafts in his checking accounts, and the overdrafts were to be treated as loans. Subsequently, the bank sent the plaintiff a notice which informed "checking-plus" customers that on a specified date the interest rate would be increased. Plaintiff had the choices of continuing his use of the checking plus plan at the increased rate or of discontinuing the plan. After the effective date of the change, the plaintiff continued to write checks in excess of his checking account balance, and the new rate was applied to his new advances, as well as his past balances. In analyzing these facts, the court stated;

> "The checking-plus agreement between plaintiff and the Bank provided that it could be terminated by either party at any time by 'giving written notice to that effect to the other party.' The Bank's September notice to plaintiff was in effect a notice of termination of the checking-plus agreement coupled with an offer to continue the present service at a new rate, * * *. By writing new overdrafts, plaintiff accepted this offer and thus refinanced his existing balance under the new arrangement and the new law." (270 N.W.2d 281, 287.)

We follow *Beck*, and find that plaintiff cardholders accepted the modification if they used their credit cards after the modifications.

Plaintiffs rely on *Board of Education v. Barracks* (1924), 235 Ill. App. 35, in arguing that consideration for an original contract does not attach to and support subsequent modifications. That case, quoting from other cases, stated that "doing or undertaking to do only that which one is already under a legal obligation to do by his contract is no consideration for another's agreement." (235 Ill. App. 35, 45.) This principle is inapplicable here. Either the cardholder agreements constituted offers to extend credit which could be withdrawn at any time, or if they constituted contracts, those contracts were terminable at will. Thus, the card issuers here had no pre-existing duty to furnish credit forever on fixed terms. Significantly, *Barracks* did not involve a contract terminable at will.

Plaintiffs also argue that they have not accepted the modifications. Most of the modifications had prospective effects only, but, as discussed above, some had retroactive effects. We feel that *Beck* disposes of this argument. They also rely on *People ex rel. Sterba v. Blaser* (1975), 33 Ill. App. 3d 1, 337 N.E.2d 410, which stated "that no contract can be modified or amended in an *ex parte* fashion by one of the contracting parties without the knowledge and consent of the remaining party to the agreement." (33 Ill. App. 3d 1, 9.) The case at bar, however, involves at most a contract terminable at will, and the law is clear that such a contract can be modified at any time as a condition of its continuance.

■■ On a motion to dismiss, all well-pleaded facts are accepted as true (*Steinberg v. Chicago Medical School* (1977), 69 Ill. 2d 320, 329), and "a cause of action should not be dismissed on the pleadings unless it clearly appears that no set of facts can be proved which will entitle plaintiffs to recover." (*Fitzgerald v. Chicago Title & Trust Co.* (1978), 72 Ill. 2d 179, 187, 380 N.E.2d 790.) Applying this standard, the circuit court correctly concluded that plaintiffs would not be able to prove any set of facts under the amended complaint which would entitle them to judicial relief.

For the aforementioned reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

McNAMARA and RIZZI, JJ., concur.