In re James Richard CARAGLIOR, Jr.
and Maria M. Caraglior, Debtors.

James Richard Caraglior, Jr.
and Maria M. Caraglior,
Movants,

v.

World Savings & Loan, Park City Tobacco, People's Bank, Malcolm M. Bekoff, DDS, Mbna America Bank, Fairfield County Tobacco & Candy Company, Merchants Express Money Order, and Barbara H. Katz, Chapter 7 Trustee, Respondents.

No. 99–32814.

United States Bankruptcy Court,
D. Connecticut.

Aug. 17, 2000.

James G. O'Rourke, Stratford, for Debtors/Movants.

Louis C. Zowine, Bridgeport, for Respondent People's Bank.

Barbara H. Katz, New Haven, Chapter 7 Trustee.

## MEMORANDUM OF DECISION WITH RESPECT TO MOTION TO AVOID LIEN AND OBJECTION THERETO

LORRAINE M. WEIL, Bankruptcy Judge.

This contested matter seeks to resolve the above-referenced debtors' (the "Debtors") First Amended Motion To Avoid Lien Under § 522(f) (the "Motion")[1] against real property situated at 475 Pilgrim Lane, Stratford (the "Property"), on the basis that certain liens described therein impair the homestead exemption provided to the Debtors by Conn. Gen. Stat. § 52–352b(t).[2] People's Bank (together with any predecessors in interest with respect to the subject debt, "People's") objects (the "Objection") to the Motion contending that its claim arose prior to the effective date of the homestead exemption, and that such exemption is, therefore, not available to the Debtors.[3]

1. The Debtors initially filed a Motion To Avoid Lien Under § 522(f) on July 14, 1999, but that motion was denied for failure to prosecute on August 12, 1999.

2. That provision provides:
 The following property of any natural person shall be exempt:
 . . .
 (t) the homestead of the exemptioner to the value of seventy-five thousand dollars, provided value shall be determined as the fair market value of the real property less the amount of any statutory or consensual lien which encumbers it . . . .
 Conn. Gen.Stat. Ann. § 52–352b(t) (West 1999).

3. People's is the only remaining objector to the Motion. The objection by Fairfield City Tobacco & Candy Company was overruled for failure to prosecute on December 8, 1999.

## BACKGROUND

The parties have stipulated to the following facts. The Debtors commenced this chapter 7 case on June 28, 1999. Prior to filing bankruptcy, the debtor James Caraglior (hereafter, "Mr. Caraglior") signed a written request (the "1985 Request"), dated June 17, 1985, for the issuance of a Visa Premium credit card. The card was issued and Mr. Caraglior used the subject credit facility from time to time thereafter. On April 18, 1994, Mr. Caraglior's then-existing credit card account balance was paid down to "zero". Accordingly, all of the credit extensions underlying the subject secured debt were based upon credit card use subsequent to April 18, 1994. Mr. Caraglior subsequently defaulted with respect to his credit card debt and, on July 3, 1996, People's obtained a state court judgment against Mr. Caraglior for the sum of $5,355.24 with respect to such debt. On July 9, 1996, People's recorded its judgment as a lien against the Property.

In their bankruptcy schedules, the Debtors valued their aggregate interests in the Property at $240,000 (Schedule A–Real Property) and asserted that the Property was encumbered by secured debts that totaled $178,681.15, including People's judgment lien (Schedule D–Creditors Holding Secured Claims).[4] Pursuant to Bankruptcy Code § 522(b)(2), the Debtors elected the exemptions provided to them by Connecticut state law and claimed an aggregate $150,000 homestead exemption in the Property pursuant to Conn. Gen. Stat. § 52–352b(t) (Schedule C–Property Claimed As Exempt).[5]

On November 19, 1999, the Debtors filed the Motion in response to which People's filed the Objection. The Debtors argue that: (a) the credit card was paid down to a zero balance on April 18, 1994 which satisfied any liability on any obligation previously owed thereunder, (b) the subject obligation which merged into the judgment secured by People's lien was incurred after April 18, 1994, well after the October 1, 1993 effective date of the Connecticut homestead exemption statute, and (c) accordingly, People's lien properly can be avoided as impairing the Debtors' homestead exemption. People's responds that the relevant obligation originated on the date of the 1985 Request (and/or a pre-October 1, 1993 credit card agreement with Mr. Caraglior, discussed below) and remained a continuing obligation on an open-ended credit line. Thus, People's argues, the obligation predates the effective date of the homestead exemption statute, and its judgment lien is not subject to Debtors' homestead exemption.[6]

The court heard oral arguments at a nonevidentiary hearing held on December 8, 1999, at which hearing People's also submitted its Memorandum of Law. Neither People's nor the Debtors placed a copy of the relevant credit card agreement between them into the record at or prior to that nonevidentiary hearing. Typically, credit card agreements are freely cancellable by the issuer even in the absence of default by the cardholder. *See Garber v. Harris Trust & Savings Bank,* 104 Ill. App.3d 675, 60 Ill.Dec. 410, 432 N.E.2d 1309 (1982); *see also In re Sloan,* 211 B.R. 766 (Bankr.M.D.Fla.1997). Because this court deemed the cancellation provisions of the subject credit card agreement to be

---

4. Schedule D listed the value of People's judgment lien as $5,475.24.

5. On September 30, 1999, an order entered in favor of World Savings and Loan Association granting relief from the automatic stay to foreclose on its mortgage against the Property. The status of any resulting foreclosure proceeding is unknown to the court.

6. Although the Debtors' Schedule D and People's Memorandum of Law in Support of Objection to Debtors' Motion To Avoid Lien (the "Memorandum of Law") recognized the subject obligation as Mr. Caraglior's only, the parties have not analyzed the application of Section 522(f) strictly as to Mr. Caraglior's interest in the Property (as opposed to treating the subject debt as a joint debt of the Debtors) and neither will this court.

crucial to resolution of the issue to be decided here, the court ordered a rehearing on the Motion to give People's the opportunity to prove (if it could) that its credit card agreement with Mr. Caraglior was *not* an agreement typical to the credit card industry in that it was *not* freely cancellable by the card issuer in the absence of default by the cardholder. (*See* Memorandum with Respect to Order for Rehearing on Motion To Avoid Lien and Objection Thereto, dated December 16, 1999.)

The rehearing on the Motion was held on January 23, 2000. At the rehearing, People's placed into the record a copy of what it and the Debtors concede to be a copy of the relevant "Credit Card Plan Agreement" between the parties.[7] Paragraph 22 of the Credit Card Plan Agreement provides in relevant part as follows:

> Even if [Mr. Caraglior] ... [is] not in default, [People's] may close the account at any time and cancel [Mr. Caraglior's] ... privilege to make further Purchases, receive Cash Advances or write Balance Transfer Checks.

(People's Hr'g Ex. 1, ¶ 22.) In light of the foregoing, People's conceded at the rehearing that, at all relevant times on and after October 1, 1993 (and April 18, 1984), it was within People's power to cancel Mr. Caraglior's credit card and prevent further exposure with respect to it.[8] At the conclusion of the rehearing on the Motion, the court took the matter under advisement and now renders its memorandum of decision.

## DISCUSSION

The parties agree that the only issue to be resolved with respect to the Motion is whether People's judgment lien is subject to the Connecticut homestead exemption under Section 52–352b(t). It is well established that, for the Connecticut homestead exemption to apply, both the lien and the obligation or claim secured by it must have arisen after October 1, 1993 (the "Effective Date"). *See* 1993 Conn. Pub. Acts 93–301 § 3 ("[Conn.Gen.Stat. § 52–352b(t)] ... shall take effect October 1, 1993, and shall be applicable to any lien for any obligation or claim arising on or after said date.") (the "Effective Date Provision"). *See also Gernat v. Belford (In re Gernat),* 192 B.R. 601 (D.Conn.), *aff'd,* 98 F.3d 729 (2d Cir.1996). The parties have stipulated that Mr. Caraglior reduced the balance of his credit card account to "zero" in 1994. Accordingly, the entire current credit card debt at issue necessarily arose out of Mr. Caraglior's credit card use (and People's resulting credit advances) *after* the Effective Date.[9] The issue here is the application of the Effective Date Provision's requirement that, for the homestead exemption to be applicable, the relevant "obligation or claim [must have] aris[en] on or after [October 1, 1993]" in the context of extensions of credit made after October 1, 1993 pursuant to an agreement for the extension of credit entered into prior to October 1, 1993 but freely cancellable by the creditor at all times on and after October 1, 1993. There is no applicable case law on this issue in this district or from the Connecticut courts.

Stripped to their essentials, the parties respective arguments are as follows. People's argues that Mr. Caraglior's obligation to pay the balance of his credit card ac-

---

7. No other evidence was introduced by either party at the rehearing.

8. The Credit Card Agreement is undated and unsigned. *See id.* However, in light of People's concession, the court here assumes that the Agreement was entered into by the parties prior to October 1, 1993.

9. The record does not disclose whether People's claim against Mr. Caraglior relates sole-ly to his use of the relevant credit card(s) or relates to some mix of credit card use, Cash Advances and/or Balance Transfer Checks. It is undisputed that all the relevant transactions occurred after April 18, 1994. For simplicity's sake and because the precise nature of the underlying transactions is not relevant here, the court will assume that People's claim against Mr. Caraglior arises solely from his credit card use.

count as it existed from time to time existed in at least contingent form as of the date of his entry into the Credit Card Agreement which was before October 1, 1993. The Debtors argue that Mr. Caraglior's obligations (and People's claim) arose only when People's became obligated to third-party merchants or otherwise actually made credit advances with respect to the credit card account.

Neither of the foregoing constructions of the Effective Date Provision is unreasonable. People's approach would extend the protections of the non-retroactive application of the homestead exemption to credit card accounts (not just credit card balances) existing prior to the Effective Date. That approach would protect the continuity of the credit relationship, which conceivably could have been the legislative intent in enacting the Effective Date Provision. On the other hand, the Debtors' position is supported by authority which holds that, when the credit card agreement is freely cancellable by the card issuer even in the absence of default by the cardholder, each use of the credit facility provided thereunder constitutes a separate contract. *See Garber,* 104 Ill.App.3d 675, 60 Ill.Dec. 410, 432 N.E.2d 1309; 20 Am.Jur.2d *Credit Cards and Charge Accounts* § 43 (1995). The Debtors' approach limits the protection of the non-retroactive application of the homestead exemption to creditors who were not in a position to terminate their exposure in anticipation of the change in law represented by the creation of the homestead exemption. That also could have been the legislative intent behind the Effective Date Provision. Here, People's could have canceled the credit card agreement in anticipation of the impending change in Connecticut exemption law as the surest way of terminating its exposure.

In order to resolve the instant dispute, the court must construe the Effective Date Provision "in light of well established principles that require [the court] ... to ascertain and give effect to the apparent intent of the legislature." *Caltabiano v. Planning and Zoning Comm'n,* 211 Conn. 662, 666, 560 A.2d 975 (1989) (citations and internal quotation marks omitted). *See also · Office of Consumer Counsel v. Dep't of Public Utility Control,* 246 Conn. 18, 29, 716 A.2d 78 (1998). That intent is determined initially by reference to the words of the statute. *Lunn v. Cummings & Lockwood,* 56 Conn.App. 363, 371–72, 743 A.2d 653 (2000). When the language of the statute is clear and unmistakable, construction is prohibited and legislative intent is conclusively established by the statute's plain meaning. *Caltabiano,* 211 Conn. at 666, 560 A.2d 975. *See also State ex rel. Rourke v. Barbieri,* 139 Conn. 203, 91 A.2d 773 (1952). However, here the statute is ambiguous because its plain language is susceptible of two reasonable constructions. In that situation, a court may ascertain legislative intent from legislative proceedings/history and the statute's intended purpose. *See Caltabiano,* 211 Conn. at 666, 560 A.2d 975; *American Universal Ins. Co. v. DelGreco,* 205 Conn. 178, 193, 530 A.2d 171 (1987). However, the record of legislative proceedings here is unhelpful.[10] In that situation, a court may ascertain presumed legislative intent by use of well-established rules of statutory construction. 73 Am. Jur.2d *Statutes* § 146 (1974). That is the course this court has adopted below.

It is a well-established rule of statutory construction that:

[E]xemption laws must be liberally construed in favor of a debtor and/or the

---

10. The most nearly helpful legislative statement appears in the comments of Representative Holbrook printed in Volume 36 of the 1993 Connecticut General Assembly House Proceedings as follows: "We are not talking about anything here that is retroactive. It takes effect with any unsecured loans · that occur after the [Effective D]ate ...," Conn. Gen. Assembly House Proceedings 1993, Vol. 36, Part 30 at 10824, 10855–56. However, the foregoing is not helpful in ascertaining when the unsecured loan would be deemed to have "occur[red]" under these circumstances for Effective Date Provision purposes.

debtor's family, so that their purposes may be properly effectuated. For this reason, no mere technicality should defeat the right of exemption, and whenever the claim to an exemption can be brought within the purpose and intent of the statute by a fair and reasonable interpretation, the exemption should be allowed. Thus, statutory language should not be restricted in its meaning and effect so as to minimize its operation on the beneficent objects of the statutes. Furthermore, when there is a doubt as to a statute's intent, it should be construed in favor of the debtor, especially in the absence of a clear legislative statement not to favor the debtor, since the creditor is almost always in a better position to protect its interest than is a debtor.

31 Am.Jur.2d *Exemptions* § 17 (1989). *Accord In re Weaver,* 339 F.Supp. 961, 963 (D.Conn.1972); *In re Clifford,* 222 B.R. 8, 12 (Bankr.D.Conn.1998) (Krechevsky, B.J.); *Hitchcock v. Holmes,* 43 Conn. 528 (1876). The foregoing requires that exceptions to exemption statutes (which the Effective Date Provision essentially is) be strictly construed. *See* 31 Am.Jur.2d *Exemptions* § 277 (1989) ("The reasons for according a liberal construction to exemption acts influence the courts to interpret strictly provisions· creating exceptions to the exemption laws.") (footnote omitted).

 Here, in construing the Effective Date Provision, the court is presented with two reasonable alternative constructions, one of which (the Debtors') is a strict construction which favors debtors. Accordingly, it is that construction that the court will adopt. Therefore, the court holds that when a creditor asserts a "claim or obligation" arising from such creditor's extension of credit to a debtor pursuant to a credit agreement which was freely cancellable by the creditor even in the absence of debtor default, for purposes of the Effective Date Provision such "claim or obligation" will be deemed to have "arisen" when the credit which underlies such "claim or obligation" actually either was drawn upon or was otherwise irrevocably committed. *Cf. In re Sloan,* 211 B.R. 766, 767 (Bankr.M.D.Fla.1997) (construing October 1, 1993 effective date provision of Florida Statute § 222.25 (Florida exemption statute); "when a credit card company permitted a cardholder to continue using his or her credit card after October 1, 1993, it tacitly agreed that the cardholder was entitled to use the exemption contained in Section 222.25. The credit card company has a choice. *It could have. revoked the cardholder's charging privilege after October 1, 1993.* If it did not, it is bound by the reach of Florida's exemption statutes, including Section 222.25.") (emphasis· added).

*Corson v. Fidelity and Guaranty Insurance Co. (In re Corson),* 206 B.R. 17 (Bankr.D.Conn.1997) (Dabrowski, B.J.), upon which both sides here rely, is not contrary to the above-stated holding. In *Corson,* a surety issued a statutory Labor and Material Bond to the State of Connecticut with respect to a certain construction contract between the bond principal and the State.[11] In the agreement pursuant to which the surety bond was issued, the debtor in *Corson* (an insider of the bond principal) agreed to indemnify the surety for any loss incurred by it in issuing the bond. The bond principal defaulted under the construction contract and the surety was required to pay out on its bond after the Effective Date. The surety sued the debtor for reimbursement, obtained a judgment against him and filed the judg-

---

11. The date of the construction contract does not appear in the opinion. However, the record in *Corson* discloses that the relevant construction contract also was dated prior to the Effective Date, and that the relevant surety bond had neither a termination date nor a cancellation provision. The record in *Corson* also shows that, although the surety bond was issued by the surety, the related judgment was held jointly by the surety and its affiliate pursuant to the agreement with the bond principal. For simplicity's sake, the court will speak here as if the judgment was held solely by the surety.

ment as a lien against his homestead. The debtor commenced a case under chapter 7 of the Bankruptcy Code and moved to avoid the surety's judgment lien as impairing his homestead exemption pursuant to Bankruptcy Code § 522(f). In denying the debtor's motion, the court rejected the debtor's argument that his claim or obligation "arose" for Effective Date Provision purposes at the time the surety had paid out. Rather, the court held, the relevant claim or obligation "arose" when the bond was executed and delivered by the surety to the State. The *Corson* court reasoned that the homestead exemption was not assertable against the surety because "the [surety] ... had *fully exposed* [itself] ...financially in reliance upon the wherewithal of the Debtor prior to the existence of a homestead exemption in Connecticut state law." *Corson*, 206 B.R. at 21 (emphasis added). In contrast to the facts here, the surety in *Corson* was powerless to terminate its exposure under its bond to the State (and subcontractors). Here, People's could have terminated its exposure on the relevant credit card account in anticipation of the impending change in Connecticut exemption law. To argue that People's relied upon prior law in allowing Mr. Caraglior to continue to have access to credit after the Effective Date begs the question of whether such reliance was legally justified. As the court concludes above, any such reliance by People's would have been based upon an erroneous construction of the Effective Date Provision. Thus, such reliance would not have been legally justified.[12]

## CONCLUSION

For the reasons stated above, the Debtors' Motion shall be granted as to all re-

spondents to the Motion (including People's). An order will issue in accordance with this memorandum of decision.[13]

**12.** Nor does *Alessandro v. People's Bank (In re Alessandro)*, 243 B.R. 611 (Bankr.D.Conn. 2000) (Shiff, C.B.J.), assist People's here. Although *Alessandro* might be read as inconsistent with this opinion, the court *sua sponte* ordered a rehearing in that case. *See Alessandro*, No. 98–50683, 2000 WL 1133165 (Bankr.D.Conn. Jan.26, 2000). As of August 1, 2000, the rehearing in *Alessandro* was con-

tinued indefinitely due to the death of the debtor.

**13.** This memorandum of decision constitutes the findings of fact and conclusions of law mandated by Rules 9014 and 7052 of the Federal Rules of Bankruptcy Procedure.