**In re Richard Lee BROWN & Monica Lee Brown, Debtors.**

No. 4:08–bk–13535.

United States Bankruptcy Court,
E.D. Arkansas,
Little Rock Division.

March 19, 2009.

John Flynn, for Debtors.

Kimberly Wood Tucker, for Creditor.

Mark T. McCarty, Trustee.

*MEMORANDUM OPINION AND OR-
DER OVERRULING OBJECTION
TO CLAIM 4 OF AMERICAN EX-
PRESS CENTURION BANK*

AUDREY R. EVANS, Bankruptcy Judge.

On November 18, 2008, the Court heard Debtor's *Objection to Claim Number 4 of American Express Centurion Bank* ("**Objection to Claim**") filed on October 3, 2008, and the *Response of American Express Centurion Bank to Debtors' Objections To Claim Number 4,* filed on November 3, 2008.[1] John Flynn appeared on behalf of the Debtors, Richard Lee Brown and Monica Lee Brown, who were also present. Kimberly Tucker appeared on behalf of American Express Centurion Bank (the "**Creditor**"). The parties dispute whether the Creditor's claim, which is based on credit card debt, should be governed by Arkansas' three-year statute of limitations for open accounts or the five-year statute of limitations for written contracts. At the hearing, Debtors conceded that the credit card agreement ("**Agreement**"), attached to Claim 4 by the Creditor, established prima facie evidence of the writing upon which the claim is based, but argued that the claim was barred by the three-year statute of limitations applicable to open accounts under Ark.Code Ann. § 16–56–105. The Creditor denied that § 16–56–105 was the controlling statute of limitation for its claim and affirmatively pled that § 16–56–111, which provides a five-year limitations period for written contracts, was the appropriate statute to be applied to the claim. Following the arguments of counsel, the Court took the matter under advisement.

This is a core proceeding under 28 U.S.C. § 157(b)(2)(B). This Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule of Procedure 7052.

## FACTS

These are the uncontested facts:

1. Debtors filed a voluntary petition under Chapter 13 on June 12, 2008.

2. Debtors held an Optima Credit Card, and charges made on the card were outstanding at the time of filing. Debtors conceded that the writing, entitled *Agreement Between Optima Gold Cardmember and American Express Centurion Bank* represented a copy of the writing they received upon issuance of the credit card.

3. On July 2, 2008, Creditor filed a timely unsecured claim in the amount of $10,929 representing Debtors' pre-petition credit card charges. (Claim Number 4).[2]

4. Debtors used the credit card, received account statements from the Creditor, and made prior payments to the Creditor on this account.

5. Creditor received Debtors' last payment or Debtors made their last purchase more than three years but less than five years from the date of this claim.

---

1. On October 3, 2008, Debtors filed an Objection to Claims 4 and 8 filed by American Express Centurion Bank and Ecast Settlement Corporation. On November 3, 2008, American Express Centurion Bank and Ecast Settlement Corporation, filed a response to Objection to Claims Number 4 and 8, and on November 28, 2008, Ecast Settlement Corporation withdrew Claim Number 8.

2. Claim 4 was subsequently amended on November 13, 2008, and a copy of the Agreement was attached to the claim at that time. Debtors filed an *Amended Objection to Claim Number 4* on November 14, 2008; however, they did not raise any issues regarding the amendment of the claim in their objection.

## PARTIES' POSITIONS AND ISSUE PRESENTED

The Debtors assert that Claim 4 is time-barred by the statute of limitations under Arkansas law, and thus, is not allowable under 11 U.S.C. § 502(b)(1).[3] Specifically, Debtors argue that the Agreement, upon which Creditor's claim is based, does not fall within the definition of a written contract for statute of limitation purposes for the following reasons: 1) it is unsigned, 2) the terms may be changed by the issuer at any time without approval from the cardholder, and 3) either party may terminate the Agreement at any time. As a result, Debtors assert that the Agreement is an open account subject to the three-year statute of limitations provided for in Ark. Code Ann. § 16–56–105.[4] The Creditor contends that the Agreement, sent to the Debtors upon issuance of the credit card, specifically states, that "... when you keep, sign or use the Optima Card issued to you ... you agree to the terms of this Agreement." Thus, the Creditor argues that the Debtors manifested their acceptance of the terms of the Agreement by using the card. The Creditor asserts that the credit card debt, as evidenced by a copy of the original written agreement and monthly billing statements, is therefore subject to the five-year statute of limitation provided for in Ark. Code Ann. § 16–56–111.[5]

The issue for the Court to decide in this case is whether the credit card debt stated in Claim 4, which is evidenced by a written agreement, meets the requirements of a written contract for statute of limitation purposes. The Creditor argues that although this Court previously applied the 3–year statute of limitation to Claims 6 and 7 in this case,[6] Claim Number 4 can be distinguished from those claims because here, a written agreement was attached to the claim. Debtors concede that they received the Agreement, used the credit card, and sent payments based on monthly balance statements. Applying Arkansas law, and taking into account the written Agreement attached to the Creditor's claim, the Court finds that the Agreement is a written contract and is governed by the five-year statute of limitations, as explained below.

## DISCUSSION

Under Arkansas law, the essential elements of a contract are: 1) competent parties, 2) subject matter, 3) legal consideration, 4) mutual agreement, and 5)

3. Section 502(b)(1) provides that in order for a claim to be allowed against a Debtor, it must be enforceable under applicable non-bankruptcy law. 11 U.S.C. § 502(b)(1).

4. Actions founded upon a contract, but not under seal or in writing, shall commence within three years after the cause of action. Ark. Code Ann. § 16–56–105.

5. Under Arkansas law, the applicable statute of limitations based on a written agreement is five years from the last date of action or last payment, whichever occurs first. Ark. Code Ann. § 16–56–11.

6. Debtors in this case also filed objections to Claims 6 and 7, and on October 21, 2008, a hearing was held to determine the applicable statute of limitations to those claims, which were also based on credit card debt. The Court, ruling from the bench, sustained the objection to Claims 6 and 7 pursuant to Ark. Code Ann. § 16–56–105, and in reliance on *Northwest Arkansas Recovery, Inc. v. Davis,* found that the credit card debt was analogous to an open account. *Northwest Arkansas Recovery, Inc. v. Davis,* 89 Ark. App. 62, 200 S.W.3d 481 (2004). With respect to Claims 6 and 7, a copy of the written agreement was not attached to the claims, nor was it introduced into evidence, and even though the Debtors did not deny the existence of the credit card or using the card for the amounts claimed, the Creditors did not establish prima facie evidence that Claims 6 and 7 were based on a written agreement.

mutual obligations. *Hunt v. McIlroy Bank and Trust*, 2 Ark.App. 87, 616 S.W.2d 759 (1981). Of the five elements, only mutual agreement and mutual obligations are in issue. Debtors argue that, despite the existence of a written agreement in this case, mutual assent is lacking because the Agreement is unsigned. The Court finds that this argument lacks merit because Arkansas case law recognizes that acceptance of a contract may be accomplished by words or by conduct. *Childs v. Adams*, 322 Ark. 424, 909 S.W.2d 641 (1995). Although Arkansas courts have not specifically discussed the issue of "conduct as acceptance" when the contract is an unsigned credit card agreement, the Court will rely on other state courts that have addressed the issue. The Georgia Court of Appeals in *Hill v. American Express* found that issuance of a credit card is simply an offer to a contract, which does not become binding until the cardholder manifests its mutual assent by retaining the card and using it in accordance with the terms of the agreement. *Hill v. American Express*, 289 Ga.App. 576, 577, 657 S.E.2d 547 (Ga.App.2008) (Based on this finding, the Court applied the six-year statute of limitations for written contracts). *See also Phoenix Recovery Group, Inc. v. Mehta*, 291 Ga.App. 874, 663 S.E.2d 290 (Ga.App.2008); *Davis v. Discover Bank*, 277 Ga.App. 864, 866, 627 S.E.2d 819 (2006). Thus, the contract is not formed at the issuance of the credit card, but rather, each time the card is used in accordance with the terms of the agreement. *See Garber v. Harris Trust & Savings Bank*, 104 Ill.App.3d 675, 678, 60 Ill.Dec. 410, 432 N.E.2d 1309 (1982). "Because it is the *use* of the credit card, and not the *issuance*, that creates an enforceable contract, each time a cardholder uses

his credit card, he accepts the offer by tendering his promise to perform (*i.e.*, to repay the debt upon the terms set forth in the credit card agreement)." *Bank of America v. Jarczyk*, 268 B.R. 17, 22 (W.D.N.Y.2001) (emphasis in original). *See also Ramirez v. Palisades Collection LLC*, 250 F.R.D. 366 (N.D.Ill.2008).

In this case, the Creditor presented uncontested evidence that a written agreement existed. The Creditor extended a written offer when it issued the credit card to be accepted or rejected by the Debtors in accordance with the written Agreement. The Agreement specifically stated that upon use of the card, the cardholder accepts the stated terms of the Agreement. Even though the Agreement was unsigned, a binding contract between the Debtors and the Creditor was formed when the Debtors used the card and received the benefit of the bargain.

 The Debtors also argue that the Agreement is not binding on the basis that it may be unilaterally changed or terminated; thus, it does not meet the mutual obligation requirement for a valid contract. Arkansas law does not support the Debtors' position. Under Arkansas law,

> "[p]arties are free to modify their contract, but it is essential that both parties agree to the modification and its terms. See *City of Lamar v. Clarksville*, 314 Ark. 413, 863 S.W.2d 805(1993). However, it is not necessary that mutual assent to a modification be express; it may be implied from acts and circumstances, and from the conduct of the parties. *See* 17A C.J.S. *Contracts* § 410 (1999)."

*Stewart v. Martin*, 2001 WL 1091208, 2001 Ark.App. LEXIS 602 (Ark.App.2001).[7] Under federal law, credit card issuers are

---

7. *But see Bank of America v. Jarczyk*, 268 B.R., at 22 (Finding that the issuance of a credit card does not create a binding contract because it can be unilaterally changed and may be withdrawn at any time).

required by law to provide written notice of any changes to the agreement. UCCC § 3.201 *et seq.* (the "UCCC"). The UCCC requires that an issuing bank that unilaterally changes the terms of the agreement, inform the cardholder at least three months in advance and provide two written notices prior to the change. *Id.* at § 3.205(1). In addition, the UCCC states that card issuers must provide cardholders with: 1) monthly account statements in writing; 2) avenues to refute contested charges, and 3) the option to discontinue use of the card at any time and terminate the agreement upon written notice. *Id.* In *Harris Trust,* an Illinois court found that a credit card agreement that is issued without a termination date and allows for modifications or terminations at-will by either party is enforceable as a valid written contract. *Garber v. Harris Trust & Savings Bank,* 104 Ill.App.3d at 683, 60 Ill. Dec. 410, 432 N.E.2d 1309. The Illinois court reasoned that a separate contract was formed each time the cardholder used the card, and explained further that even though the card issuer was under no obligation to extend credit in the future, each time the cardholder used the card (after receiving notice of modified terms), and credit was extended, a new contract was formed. *Id.*

In this case, the contractual provisions of the Agreement did not provide for a termination date, but rather, included contractual provisions allowing either party to terminate at-will.[8] The Debtors manifested their acceptance of the terms of the Agreement each time they used the credit card, thereby agreeing to any new terms that were disclosed by the Creditor in

accordance with federal and state law. Thus, the Court finds that there was a contract between the Debtors and the Creditor as stated in the Agreement, and under Arkansas law, the Agreement met all of the necessary requirements for a written contract.

## CONCLUSION

 For the foregoing reasons, the Court concludes that the written agreement is a written contract for purposes of applying the five-year statute of limitations. Accordingly, it is hereby

**ORDERED** that the *Objection to Claim # 4 of American Express Centurion Bank* is **OVERRULED.**

**IT IS SO ORDERED.**

---

8. The Agreement, in relevant part, states, that "[w]e, or any bank or financial institution participating in the Program ... may discontinue the Program at any time. We may also revoke your right to participate in the Program, but if we do, we will give you written notice of such revocation. You may terminate your participation in the Program, but you must do so by writing to us at the address disclosed ..." *Agreement Between Optima Gold Cardmember and American Express Centurion Bank* (Docket # 80, Exhibit A).