# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

**Razor Capital v. Antaal, 2012 IL App (2d) 110904**

---

| | |
|---|---|
| Appellate Court Caption | RAZOR CAPITAL, Plaintiff-Appellant, v. PAVITERJIT ANTAAL, Defendant-Appellee. |
| District & No. | Second District<br>Docket No. 2-11-0904 |
| Filed | July 11, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Plaintiff's unwritten-contract cause of action to collect a credit card debt was properly dismissed on the ground that plaintiff failed to allege the terms of the agreement with the cardholder, that the terms applied to the cardholder's account and that the cardholder received the agreement and agreed to the terms by using the card, but the cause was remanded to allow plaintiff to file an amended complaint containing those allegations. |
| Decision Under Review | Appeal from the Circuit Court of Du Page County, No. 10-AR-2408; the Hon. Bruce R. Kelsey, Judge, presiding. |
| Judgment | Reversed and remanded. |

Counsel on Appeal

Jonathan M. Bailey, of Law Office of Richard Bodmer, of Chicago, for appellant.

John A. Lipinsky, of Coman & Anderson, P.C., of Lisle, for appellee.

Panel

PRESIDING JUSTICE JORGENSEN delivered the judgment of the court, with opinion.

Justices Hutchinson and Burke concurred in the judgment and opinion.

**OPINION**

¶ 1    Plaintiff, Razor Capital, final transferee of a credit card issuer, sued defendant, Paviterjit Antaal, to collect on an alleged credit card debt. On August 10, 2011, the trial court granted with prejudice defendant's motion to dismiss plaintiff's second amended complaint. 735 ILCS 5/2-615 (West 2010). Plaintiff appeals. For the following reasons, we conclude that the complaint was properly dismissed but, nevertheless, we reverse and remand so that plaintiff may replead.

¶ 2                                   I. BACKGROUND
¶ 3                                A. Unwritten Contract
¶ 4    As plaintiff's complaints and the proceedings below focused on the decision in *Garber v. Harris Trust & Savings Bank*, 104 Ill. App. 3d 675, 684 (1982), we briefly summarize the holding therein. In *Garber*, the plaintiffs, credit card holders, brought suit against the defendants, credit card issuers, for breach of contract. Specifically, the plaintiffs argued that the defendants had breached the provisions of their cardholder agreements by modifying the terms of the agreements without consideration. In essence, the plaintiffs alleged that the cardholder agreements were binding contracts between the credit card issuers and the holders to extend credit on specific terms and that, without additional consideration, the agreements could not be modified. The appellate court rejected the plaintiffs' argument, stating, "we conclude that a contract was not formed at the time of the issuance of the credit card; *that a separate contract is created each time the card is used according to the terms of the cardholder agreement at the time of such use*; that the cardholder agreements were subject to modification at will." (Emphasis added.) *Id.* at 678. Thus, the plaintiffs were bound by the modifications to the cardholder agreements where they used the credit cards after the effective date of the modifications. *Id.* at 685.

¶ 5                              B. Complaint and Motion to Dismiss

¶ 6        On July 20, 2010, plaintiff filed a verified complaint alleging that defendant had opened a Wells Fargo credit card account (the complaint specified the account number) and made charges on the account without making the monthly payments called for "under the Agreement." Plaintiff alleged that defendant had refused to pay the balance due upon demand; specifically, the complaint alleged that defendant was in default on the account in the amount of $12,783.12, plus $3,458.37 in interest, and that the amounts alleged were due to plaintiff under either a breach-of-contract or an unjust-enrichment theory. Plaintiff further alleged that it was the final transferee of the account and, "per [the] attached cardmember agreement," was thereby entitled to the outstanding principal and interest, plus court costs and reasonable attorney fees.

¶ 7        Plaintiff attached to the complaint an affidavit from one of its agents, wherein the agent attested that: (1) he received information from the transferor of the debt and thereby had knowledge of the facts forming the basis of the complaint; (2) defendant had applied for the credit card account either online or via telephone; (3) Wells Fargo made an offer of credit to defendant in the form of a credit card with terms and conditions governing use of the card; (4) defendant accepted the credit offer by using the credit card to make purchases; (5) plaintiff purchased and is now the owner of the account and, therefore, is the party to whom defendant is liable; (6) written demand was made upon defendant; and (7) defendant owes plaintiff "the sum of $12,783.12 plus interest as of May 10, 2010 of $3,465.47 at 19.99% per annum, totaling $16,248.59."

¶ 8        Also attached to the complaint were two pages of an undated "Wells Fargo Visa or Mastercard Customer Agreement and Disclosure Statement." The section entitled "promise to pay" provides that the account holder promises to pay the total amount of purchases or cash advances, as well as any finance charges and other fees and charges due under the agreement, and that, further, to the extent permitted by law, the account holder promises to pay all costs and expenses, including reasonable attorney fees, that the lender incurs in enforcing the agreement.

¶ 9        Pursuant to section 2-619.1 of the Code of Civil Procedure (Code) (735 ILCS 5/2-619.1 (West 2010)), defendant filed a combined motion to dismiss the complaint, based on standing and plaintiff's failure to attach to the complaint a written agreement as required by section 2-606 of the Code (735 ILCS 5/2-606 (West 2010)).[1] At a March 8, 2011, hearing on defendant's motion, plaintiff represented first that, in response to defendant's challenge to plaintiff's standing, it had provided defense counsel with assignment documents reflecting a chain of title for defendant's account. Next, regarding defendant's argument that the complaint failed because there was no written agreement attached pursuant to section 2-606, plaintiff argued, "it's a credit card. Credit cards are not written contracts. It's a non-written

---

[1]Section 2-606 provides: "If a claim or defense is founded upon a written instrument, a copy thereof, or of so much of the same as is relevant, must be attached to the pleading as an exhibit or recited therein, unless the pleader attaches to his or her pleading an affidavit stating facts showing that the instrument is not accessible to him or her." 735 ILCS 5/2-606 (West 2010).

contract. *Garber v. Harris Trust* has clarified that point of law. \*\*\* The actual contract is each time the card is swept \*\*\*."

¶ 10 The court acknowledged the merit of plaintiff's argument, noting for defendant that, because plaintiff was pursuing an unwritten-contract theory as described in *Garber*, "the attached agreement is not necessary from my perspective in my courtroom. It's very simple. It's a question of fact and a question of proof. [Plaintiff] may have a difficult time, but that's [its] choice." The court stated that it was denying defendant's motion to dismiss because plaintiff was following *Garber*.

¶ 11 Thereafter, however, the court noted for plaintiff that, to succeed, it would need to establish each time defendant had used the card, stating, "I don't know how you're going to do it, but you have a right to do so." In response to those comments, plaintiff requested leave to amend the complaint to "make sure that it's stated as clearly as possible with every cause of action as possible." The court granted plaintiff leave to file an amended complaint. Defendant asked, "so is my motion granted?" The court responded, "your motion is granted." The court entered an order granting defendant's motion[2] and giving plaintiff leave to amend the complaint.

¶ 12                                  C. Amended Complaint

¶ 13 On April 8, 2011, plaintiff filed a four-count amended complaint alleging breach of contract, account stated, promissory estoppel, and *quantum meruit*. In the breach-of-contract count, plaintiff again alleged that it was transferee of the account, and it attached to the complaint a purported chain of title. Further, plaintiff again alleged that defendant opened a Wells Fargo credit card account and, without making the monthly payments called for under the agreement, made charges on the account. The amended complaint attached the affidavit and the cardmember agreement that had been attached to the initial complaint, and it asserted that defendant owed plaintiff principal, interest, and attorney fees.

¶ 14 On April 13, 2011, the parties appeared for a status hearing. Defendant represented that she would "probably" move to dismiss the amended complaint. The court informed plaintiff that defendant's motion would "be a good motion" and that the amended complaint did not include a written agreement and, while it might "get" the *quantum meruit* count "in place," it had not properly pleaded the other counts.[3] Plaintiff reiterated that it intended to follow *Garber*; the court responded that the complaint was, nevertheless, not properly pleaded. Noting that plaintiff was not the first to raise this issue, the court stated: "if you're going on the agreement, you have to go on the agreement, but you can't take *Garber* and bootstrap the agreement \*\*\*. *Garber* says you get to use it and if you use it, you get to pay for it, but it

---

[2]We note that, because plaintiff voluntarily dismissed its complaint and, in fact, the court had already denied defendant's motion, the court's comments and order granting defendant's motion inaccurately reflect what transpired at the hearing.

[3]The court also noted to plaintiff that it thought "Count [V] stands just to give you a heads up," but, as there was no count V in the amended complaint, the court's reference is unclear.

doesn't say that if you use it, you're adopting the agreement." The court noted that it assumed that one of the parties would ultimately appeal its ruling and that it would be "happy to do that," because clarification might be needed from the appellate court. It granted plaintiff another opportunity to amend its complaint.

¶ 15                               D. Second Amended Complaint

¶ 16        On May 11, 2011, plaintiff filed a two-count, second amended complaint alleging breach of contract and *quantum meruit*. The complaint again alleged that defendant obtained a credit card account, incurred charges, and, after demand, failed to pay. Plaintiff sought the principal balance, attorney fees, court costs, and prejudgment and postjudgment interest. Attached to the complaint were the affidavit, chain of title, and cardmember agreement.

¶ 17        That same day, the parties appeared before the court and submitted an agreed order setting a date for defendant to answer or otherwise plead. Noting that it anticipated a motion from defendant, the court set a date for a hearing on the motion.

¶ 18        Defendant moved to dismiss the second amended complaint. On June 22, 2011, the parties appeared for the previously scheduled hearing. The court instructed plaintiff as follows:

> "You are [mixing] [proverbial] apples and oranges in trying to establish an agreement by way of the use of a credit card. *** I don't mind being appealed on this, so I'm not offended if that's the case particularly in this area because I think we need some clarification–but my position is that you can't bootstrap an agreement–a generic agreement with the use of the credit card unless you can show there's some connection between the generic agreement that you wish me to adopt with the credit card holder whether it's by way of signature or whether it's by way of acknowledgment that the agreement is out there, not just simply the mailing of the generic form every three months, six months, or whatever it takes. There has to be some specific acknowledgment that that's the agreement that is in place. I don't believe the use of the credit card in and of itself adopts or in any way acknowledges that there's a written agreement out there. I think under *Velocity* [*Investments, LLC v. Alston*, 397 Ill. App. 3d 296 (2010)], I think that clearly does not fly.
>
> Under the other cases, *Garver* [*sic*] and *Portfolio* [*Acquisitions, LLC v. Feltman*, 391 Ill. App. 3d 642 (2009)], I don't think either one of those [is] the same thing. They both allow *** you can recover on the use of the credit card *** [but it's] your choice, either the agreement or the use. *** You can't get the use and then bootstrap the agreement."

The court gave the parties time to complete briefing on the motion to dismiss.

¶ 19        The parties returned to court on August 10, 2011. The court asked plaintiff questions about *Garber* and other cases, specifically asking plaintiff to explain how its complaint pleaded that there existed an unwritten contract. Ultimately, the court provided plaintiff with a choice to have the case dismissed with prejudice or to pay opposing counsel's attorney fees for filing multiple motions to dismiss. Plaintiff chose dismissal. The court dismissed the second amended complaint with prejudice, noting that a potential cause of action probably lies in the case but, despite "ample opportunity," plaintiff failed to plead a proper cause of

action. The court noted that plaintiff is not attempting to recover under a written agreement and that *Velocity* does not apply; under *Garber*, however, "you cannot give attorney's fees *** because there is no agreement to pay those. Second you cannot get interest because there is no agreement to pay interest." The court noted that, according to *Portfolio*, a credit card account statement is not a writing that forms the basis of recovery and, further, the complaint must say that the credit card was used and benefits were received. Plaintiff appeals.

¶ 20                                    II. ANALYSIS
¶ 21                                    A. Standing

¶ 22    Before addressing the merits of plaintiff's appeal, we briefly address the issue of plaintiff's standing to bring suit against defendant. In her response brief on appeal, defendant argues that, regardless of whether plaintiff's complaints otherwise stated a cause of action, we should affirm the court's ruling because plaintiff lacks standing to bring the lawsuit. She argues that the chain-of-title documents attached to plaintiff's amended and second amended complaints contain conflicting dates that suggest an improper sale. In reply, plaintiff disputes defendant's characterization of the documents.

¶ 23    We reject defendant's challenge to plaintiff's standing to bring suit to collect the debt. As defendant concedes, although she raised the standing issue in her motion to dismiss the initial complaint, she did *not* raise the issue in her motion to dismiss the second amended complaint. Standing is an affirmative defense that is forfeited if not pleaded. See *In re A.W.J.*, 197 Ill. 2d 492, 496 (2001) (and cases cited therein).

¶ 24    Moreover, although defendant's motion to dismiss the initial complaint challenged plaintiff's standing, the trial court did not address that issue. At the hearing on the motion, plaintiff presented defendant with documents reflecting a chain of title and defendant acknowledged receipt of an assignment. Then, after hearing brief argument regarding plaintiff's intention to pursue an unwritten-contract theory, the trial court allowed plaintiff to voluntarily dismiss and amend the complaint. Thereafter, plaintiff attached the chain-of-title documents to its subsequent complaints in accordance with section 2-606 of the Code. See *Candice Co. v. Ricketts*, 281 Ill. App. 3d 359, 362 (1996) (in addition to an underlying contract, an assignment reflecting that the plaintiff has title to the claim is a document upon which the action is founded and must be attached). Defendant did not, at argument before the trial court or in her motion to dismiss the second amended complaint, reassert her challenge to standing, nor did she raise any argument regarding the chain-of-title documents. Therefore, the trial court did not consider defendant's current challenge to the validity of the chain-of-title documents, plaintiff had no opportunity to rebut or offer evidence in response to defendant's argument, and the record regarding standing was never developed. As the factual basis for the standing issue being raised on appeal was not before the trial court, we will not consider it. See *Schanowitz v. State Farm Mutual Automobile Insurance Co.*, 299 Ill. App. 3d 843, 848 (1998); see also *Evans v. United Bank of Illinois*, 226 Ill. App. 3d 526, 530-31 (1992) (considering an argument the appellee raised for the first time on appeal forfeited because the appellant did not have a chance to present evidence in response and noting that "[e]mploying the waiver rule against an appellee is particularly apt" when the appellant could

have introduced evidence to contest or refute the appellee's assertions made on appeal, had it been given an opportunity to do so).

¶ 25                                    B. Dismissal of Complaint with Prejudice

¶ 26     Turning to the merits of this appeal, plaintiff argues that the trial court erred in dismissing the complaint with prejudice. Specifically, plaintiff asserts that the trial court incorrectly determined that only the principal amount owed may be recovered under an unwritten-contract theory. Plaintiff argues that the trial court erroneously held that the other remedies under the terms and conditions of a credit card agreement, including attorney fees and interest, may be recovered only when a written-contract, as opposed to an unwritten-contract, theory is pursued. Further, plaintiff argues that the trial court improperly abandoned its role as an impartial arbiter and sought out an appeal to obtain guidance in an area of law that it believes needs clarification. Plaintiff asks that this court reinstate the complaint or allow it to amend the complaint and that we instruct the trial court that "a cause of action sounding under breach of an unwritten contract does not prohibit a plaintiff from recovering pursuant to the terms and conditions which were mailed to a consumer without a written contract."

¶ 27     We review *de novo* a trial court's section 2-615 or section 2-619 dismissal of a complaint. *Sheffler v. Commonwealth Edison Co.*, 2011 IL 110166, ¶¶ 23, 61. In ruling upon a complaint's legal sufficiency, we take as true all properly pleaded facts and all reasonable inferences that may be drawn therefrom. *Fitzgerald v. Chicago Title & Trust Co.*, 72 Ill. 2d 179, 187 (1978). A complaint is insufficient if it states mere conclusions of fact or law, and it must, at a minimum, allege facts sufficient to set forth the essential elements of a cause of action. *Allstate Insurance Co. v. Winnebago County Fair Ass'n*, 131 Ill. App. 3d 225, 232 (1985). Nevertheless, a complaint should not be dismissed for failing to state a cause of action unless it clearly appears that no set of facts could be proved under the pleadings that would entitle the plaintiff to relief. *Fitzgerald*, 72 Ill. 2d at 187.

¶ 28     We review for an abuse of discretion a trial court's decision to dismiss a complaint with prejudice. *Ingold v. Irwin*, 302 Ill. App. 3d 378, 383 (1998); *Knight v. Van Matre Rehabilitation Center, LLC*, 404 Ill. App. 3d 214, 216 (2010). When doing so, we consider whether the trial court, before dismissing with prejudice, took into account the unique and particular circumstances of the case before it; if so, the court did not abuse its discretion. *Ingold*, 302 Ill. App. 3d at 383. Here, we conclude that the trial court properly determined that plaintiff's complaint failed to state a cause of action. However, because the trial court stated that an appeal clarifying the pleading issue would be helpful, and acknowledged that plaintiff likely could state at least one cause of action against defendant, we conclude that reversal is warranted.

¶ 29     From this court's review of the record, it appears that there were two primary misconceptions below: (1) plaintiff's belief that, when pursuing collection of a credit card debt on an unwritten-contract theory, it need not plead the terms of the contract and that the terms applied to defendant; and (2) the trial court's apparent misunderstanding as reflected in its statement that "*Garber* says you get to use it and if you use it, you get to pay for it, but

it doesn't say that if you use it, you're adopting the agreement." We address each in turn.

¶ 30    The elements of a breach-of-contract cause of action include the existence of a valid and enforceable contract, performance by the plaintiff, breach of the contract by the defendant, and resultant damages or injury to the plaintiff. *Gonzalzles v. American Express Credit Corp.*, 315 Ill. App. 3d 199, 206 (2000). Most critically here, "[i]t is essential in pleading the existence of a valid contract to allege facts sufficient to indicate the terms of the contract." *Allstate Insurance*, 131 Ill. App. 3d at 233. Liberal construction cannot cure a breach-of-contract complaint that fails to plead those essential allegations. *Id.* Therefore, regardless of whether the purported contract is written, oral, or unwritten as described in *Garber*, the aforementioned pleading requirements must be satisfied.

¶ 31    Here, the second amended complaint did not properly plead a breach-of-contract cause of action. In fact, the complaint did not even allege that there was a contract between the parties, let alone specify that, each time defendant used the credit card, an unwritten contract was formed between plaintiff (or Wells Fargo) and defendant. Nor did plaintiff allege that it (or Wells Fargo) performed under the contract. Further, as the trial court emphasized in its ruling, the second amended complaint failed to allege *the terms* of the alleged contract; if the two pages of the generic (*i.e.*, not identifying the parties) cardmember agreement attached to the complaint were supposed to reflect the terms of the contract (which plaintiff did not clearly plead), plaintiff failed to plead that the agreement in any way applied to defendant's credit card account.

¶ 32    To properly plead that the generic agreement attached to the complaint applied to defendant's account when she used the card, plaintiff must, at a minimum, allege facts reflecting that those terms were *communicated* to defendant, via mail to defendant's most recent billing address or in another similar manner by which it would be reasonable to presume that defendant received them, and that defendant accepted those terms by subsequently using the card. As explained in *Garber*, modified terms of an agreement, once communicated to the cardholder, are deemed accepted when the card is used after the modifications. *Garber*, 104 Ill. App. 3d at 678, 685; see also *Asset Acceptance, LLC v. Tyler*, 2012 IL App (1st) 093559, ¶ 47 ("Consistent with the treatment of each credit card purchase as a separate offer and acceptance, modifications to credit card terms are binding between the parties when, after notice of the modifications, the cardholder uses his card.").

¶ 33    A complaint alleging breach of an unwritten contract is not, by virtue of pleading or attaching the *terms* of the alleged agreement, converted into one claiming breach of a written contract such that, as in *Velocity*, the absence of an attached written contract (or affidavit explaining the absence of same) is fatal to the claim. See *Velocity*, 397 Ill. App. 3d at 298 (complaint dismissed where it specifically alleged that the defendant was indebted to the plaintiff "by virtue of a certain agreement entered into by defendant on or about ***; said agreement is attached hereto and made a part hereof"; however, no agreement was attached reflecting the written instrument upon which the claim was founded, nor was there an affidavit explaining that the document was inaccessible). In fact, here, the court explicitly acknowledged that *Velocity* was inapplicable because plaintiff was *not* alleging breach of a

written contract.[4] Nevertheless, to pursue even an unwritten-contract claim, a plaintiff must both plead or attach the terms of the agreement allegedly breached and tie those terms to the defendant. Further, in the absence of allegations or affidavits explaining when and how an attached agreement was communicated to the defendant *and showing that the defendant used the card thereafter*, thereby accepting the agreement's terms, a plaintiff cannot recover pursuant to those terms.

¶ 34 Therefore, here, plaintiff's unwritten-contract cause of action was not properly pleaded. While it might very well be true that the generic agreement attached to plaintiff's complaint accurately reflects the terms of their unwritten contract and that defendant accepted those terms when she used the card after the agreement was communicated to her, the complaint includes no allegations or documents reflecting as such. Indeed, plaintiff wants this court to instruct the trial court that "a cause of action sounding under breach of an unwritten contract does not prohibit a plaintiff from recovering pursuant to the terms and conditions *which were mailed to a consumer* without a written contract (emphasis added)"; however, it did not plead that the terms attached to the complaint were even *mailed* to defendant (let alone to defendant's last known billing address) or that she used the card thereafter. To plead the cause of action, there must be allegations or documents reflecting the terms of the agreement between defendant and plaintiff (or plaintiff's predecessor), that the terms pertained to defendant's account, and that she received or was mailed the agreement, and that she agreed to those terms when she used the card thereafter. *Asset Acceptance*, 2012 IL App (1st) 093559, ¶ 48. We further note that plaintiff must plead that the terms alleged are those under which it seeks to recover. For example, it is theoretically possible, under *Garber*, that several versions of terms applied to defendant's account, if the terms were modified between defendant's credit card transactions. If so, and to the extent that plaintiff seeks to recover for charges defendant incurred under different versions of terms of the unwritten agreement, those terms, the communication of those terms to defendant, and defendant's subsequent use of the card will need to be separately pleaded for each version of terms under which plaintiff seeks to recover.

¶ 35 We wish to briefly address the trial court's statement that, according to *Garber*, if one uses a credit card, he or she must pay for it, but use does not mean that the agreement has been adopted. In fact, assuming that the terms or modifications of an agreement were first communicated to a credit card user, that is exactly what *Garber* said. *Garber*, 104 Ill. App.

---

[4]We note that the court referenced the *Portfolio* decision in holding that plaintiff's complaint failed to state a claim. In *Portfolio*, however, the court was reviewing the documents attached to the complaint, including credit card statements, for purposes of assessing whether there existed a written contract between the parties such that a 10-year limitations period applied to the cause of action. The court concluded that none of the attachments reflected a written contract and that, therefore, the plaintiff, which was seeking to collect on a defaulted credit card debt, could pursue only a claim for breach of an unwritten contract, which was subject to a 5-year statute of limitations. *Portfolio*, 391 Ill. App. 3d at 651-55. Here, not only did plaintiff not attach defendant's credit card statements to the complaint, it did not seek to establish a written contract for purposes of extending the statute of limitations. Therefore, *Portfolio* is not particularly relevant here.

3d at 678, 685. To the extent that the trial court suggested that recovery of attorney fees or anything other than the principal balance is precluded unless the plaintiff attaches a written agreement reflecting the entire agreement between the parties, we disagree. To clarify, even an unwritten contract has terms. Per *Garber*, each time a credit card is used, a new contract exists between the parties according to the terms "in effect" (*i.e.*, having been communicated to the defendant in a reasonable manner) at the time of the use. *Id.* Those terms might include provisions regarding attorney fees or interest. To recover, however, the plaintiff needs to allege what the terms were at the time of each use, that those terms were communicated to the defendant, and that the defendant thereafter accepted those terms by using the card.

¶ 36　　We agree with the trial court that plaintiff's complaint failed to properly plead a cause of action. We do not, however, find that dismissal with prejudice is a just result. While dismissal with prejudice was the vehicle by which this appeal could take place, the record reflects that the trial court, in its laudable attempts to guide plaintiff, potentially misguided it. Further, the trial court stated that, in its view, the pleading requirements for unwritten-contract claims were unclear and guidance from this court would be helpful. Accordingly, where even the trial court appears to have been uncertain as to the pleading requirements, we do not believe that precluding plaintiff from pursuing its claim is a just result. Finally, as a complaint generally should not be dismissed for failing to state a cause of action unless it clearly appears that no set of facts could be proved under the pleadings that would entitle the plaintiff to relief (*Allstate Insurance*, 131 Ill. App. 3d at 232), and the court here stated that a cause of action likely existed, we reverse and remand for plaintiff to file, if it so chooses, an amended complaint consistent with this decision. See also *Velocity*, 397 Ill. App. 3d at 300 (holding that improper pleading was grounds for dismissal without prejudice and remanding to trial court).

¶ 37　　　　　　　　　　　　III. CONCLUSION

¶ 38　　For the foregoing reasons, the judgment of the circuit court of Du Page County is reversed and the cause is remanded.

¶ 39　　Reversed and remanded.