NOTICE
Decision filed 01/04/18. The text of this decision may be changed or corrected prior to the filing of a Peti ion for Rehearing or the disposition of the same.

2018 IL App (5th) 160479

NO. 5-16-0479

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| MIDLAND FUNDING, LLC, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff and Counterdefendant-Appellant, | ) | St. Clair County. |
| | ) | |
| v. | ) | No. 15-L-442 |
| | ) | |
| TERESA RANEY and SHIRLEY DARNELL, | ) | Honorable |
| | ) | Christopher T. Kolker, |
| Defendants and Counterplaintiffs-Appellees. | ) | Judge, presiding. |

_____

JUSTICE OVERSTREET delivered the judgment of the court, with opinion.

Presiding Justice Barberis and Justice Goldenhersh concurred in the judgment and opinion.

**OPINION**

¶ 1    In this interlocutory appeal brought pursuant to Illinois Supreme Court Rule 307(a)(1) (eff. Feb. 26, 2010), the plaintiff-counterdefendant, Midland Funding, LLC (Midland Funding), appeals the circuit court's order denying its motion to dismiss and to compel arbitration of counterclaims filed by the defendants-counterplaintiffs, Teresa Raney and Shirley Darnell. For the reasons that follow, we affirm.

¶ 2                                 BACKGROUND

¶ 3    Darnell and Raney acquired consumer credit card accounts issued by Citibank, N.A. (Citibank), wherein they were provided with specified lines of credit for consumer purchases in exchange for paying at least the minimum amounts shown on monthly billing statements. On

1

June 11, 2015, Midland Funding, as Citibank's assignee, filed complaints against Darnell and Raney, seeking judgments in the sums of $5848.91, and $16,843.42, respectively, plus court costs, for the amounts due and owing via the Citibank lines of credit. Midland Funding alleged that it was the successor in interest to the Citibank accounts, that Midland Funding had purchased Darnell's and Raney's credit card account obligations from Citibank in the regular course of business, that Darnell and Raney had failed to make the monthly payments on said accounts and were in default on the accounts, and that Midland Funding was entitled to a judgment for the unpaid balances plus costs. Midland Funding alleged that it had purchased the accounts from Citibank on October 14, 2014 (Darnell), and April 23, 2014 (Raney), for good and valuable consideration, as evidenced by an attached bill of sale and assignment. Midland Funding also attached account statements showing a $5848.91 Sears MasterCard account balance for Darnell and a $16,843.47 Sears Premier MasterCard balance for Raney.

¶ 4    Midland Funding attached to its complaint against Darnell the affidavit of Andrew Lankey. In the affidavit dated April 16, 2015, Lankey stated that he was employed as a legal specialist with access to pertinent account records for Midland Credit Management, Inc. (MCM), servicer of Darnell's account on behalf of Midland Funding. Based upon his personal knowledge of the account records, Lankey stated that Midland Funding was the current owner of the obligation and was assigned all rights, title, and interest to Darnell's Citibank account. Lankey stated that MCM's records showed that Darnell owed a balance of $5848.91, as of April 13, 2015. Lankey stated that Darnell opened the Citibank account on November 1, 1986, the last payment posted to the account on December 17, 2013, and the account was charged off on July 29, 2014.

2

¶ 5    Midland Funding attached to its complaint against Raney the affidavit of Rhonda Schubloom. In the affidavit dated April 16, 2015, Schubloom stated that she was employed as a legal specialist with access to pertinent account records for MCM, servicer of Raney's account on behalf of Midland Funding. Based on her personal knowledge of the account records maintained on Midland Funding's behalf, Schubloom stated that Midland Funding was the current owner of the obligation and was assigned all rights, title, and interest to Raney's Citibank account. Schobloom stated that MCM's records showed that Raney owed a balance of $16,843.42 as of April 14, 2015. Schubloom stated that Raney opened the Citibank account on February 1, 1994, the last payment posted to the account on March 1, 2013, and the account was charged off on October 7, 2013.

¶ 6    In July 2015, Raney and Darnell filed answers and affirmative defenses. They also filed class action counterclaims seeking to certify statewide and nationwide classes and seeking damages based on purported violations of the Collection Agency Act (225 ILCS 425/1 *et seq.* (West 2014)), the Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/1 *et seq.* (West 2014)), and the Fair Debt Collection Practices Act (15 U.S.C. § 1692 *et seq.* (2012)). The counterclaims challenged Midland Funding's alleged practice of suing to collect debt purchased from others without sufficient proof of ownership of the debt.

¶ 7    On November 18, 2015, and December 1, 2015, Midland Funding filed motions to dismiss the counterclaims pursuant to section 2-619 of the Code of Civil Procedure (735 ILCS 5/2-619 (West 2014)) and to compel arbitration. Midland Funding argued that because the counterclaims were within the scope of a binding card agreement that included an agreement to arbitrate and a class action waiver provision (the Card Agreement), the class claims were barred and should be dismissed. Midland Funding argued that the arbitration provision in the Card

3

Agreement was subject to the Federal Arbitration Act (9 U.S.C. § 1 *et seq.* (2012)) and that Midland Funding was entitled to elect arbitration as the forum within which to address the putative class claims alleged in the counterclaims. To its motions, Midland Funding attached account statements and a November 25, 2015, declaration of Michael Burger, senior manager of operations for MCM. In the declaration, Burger stated, in pertinent part:

"1. *** I am currently employed as the Sr. Manager, Operations for [MCM]. MCM is the servicer and authorized agent for Midland Funding and manages the debt that Midland Funding purchases.

2. In my capacity as Sr. Manager, Operations for MCM, I am responsible for, among other things, maintaining and overseeing 'media', i.e., the loan agreements, account purchase and transfer information, debt collection records and other account information pertinent to accounts and debts that MCM manages for Midland Funding. I make this Declaration from my own personal knowledge of the matters set forth herein, or on information and belief based upon my review of the business records that MCM maintains for Midland Funding. If called as a witness, I could and would testify competently to the matters set forth in this Declaration.

* * *

5. As part of the sale of the Citibank Account to Midland Funding, Citibank transferred electronic records and other records for the Account to MCM, which included an Excel file identifying the Account. Attached hereto as Exhibit B is an abstract of the true and correct data from the Excel file pertaining to the Citibank Account. Citibank also provided certain account statements[, attached as Exhibit C].

***

4

7. As reflected in Exhibit A, Citibank assigned all interest in the Citibank Account to Midland Funding. Midland Funding currently owns all rights, title[,] and interest in the purchased account.

8. The records produced by Citibank included the Card Agreement applicable to the Citibank Account. See Exhibit E.

9. At the time MCM received the records in Exhibits A-E and maintained them on behalf of Midland [Funding], MCM incorporated those records into its business records that MCM keeps in the ordinary course of the regularly conducted business activity for such accounts, and it is the regular practice of MCM to make and rely upon such records, and MCM has routinely relied upon those records in conducting business. See Exhibits A-E."

¶ 8    Midland Funding attached the Card Agreement referenced in paragraph 8 of the declaration identified as Exhibit E. The language of the Card Agreement stated, "We are changing your card agreement and replacing it with a new one. The effective date of these changes is shown on your statement in the message titled 'Important Changes to Your Account Terms'." Arbitration was identified as a section change to the Card Agreement. In the arbitration section of the Card Agreement, it stated, in relevant part:

"ARBITRATION

*PLEASE READ THIS PROVISION OF THE AGREEMENT CAREFULLY*. IT PROVIDES THAT ANY DISPUTE MAY BE RESOLVED BY BINDING ARBITRATION. ARBITRATION REPLACES THE RIGHT TO GO TO COURT, INCLUDING THE RIGHT TO A JURY AND THE RIGHT TO PARTICIPATE IN A CLASS ACTION OR SIMILAR PROCEEDING. IN ARBITRATION, A DISPUTE IS

5

RESOLVED BY AN ARBITRATOR INSTEAD OF A JUDGE OR JURY. ARBITRATION PROCEDURES ARE SIMPLER AND MORE LIMITED THAN COURT PROCEDURES.

Agreement to Arbitrate: Either you or we may, without the other's consent, elect mandatory, binding arbitration for any claim, dispute, or controversy between you and us ***.

Claims Covered

*What Claims are subject to arbitration?* All Claims relating to your account, a prior related account, or our relationship are subject to arbitration, including Claims regarding the application, enforceability, or interpretation of this Agreement and this arbitration provision. All Claims are subject to arbitration, no matter what legal theory they are based on or what remedy (damages, or injunctive or declaratory relief) they seek. This includes Claims based on contract, tort (including intentional tort), fraud, agency, your or our negligence, statutory or regulatory provisions, or any other sources of law; Claims made as counterclaims, cross-claims, third-party claims, interpleaders or otherwise; and Claims made independently or with other claims. A party who initiates a proceeding in court may elect arbitration with respect to any Claim advanced in that proceeding by any other party. Claims and remedies sought as part of a class action, private attorney general or other representative action are subject to arbitration on an individual (non-class, non-representative) basis, and the arbitrator may award relief only on an individual (non-class, non-representative) basis.

\* \* \*

*** This arbitration provision is governed by the Federal Arbitration Act ***.

6

*What about Claims field in Small Claims Court?* Claims filed in a small claims court are not subject to arbitration, so long as the matter remains in such court and advances only an individual (non-class, non-representative) Claim.

*What about debt collections?* We and anyone to whom we assign your debt will not initiate an arbitration proceeding to collect a debt from you unless you assert a Claim against us or our assignee. We and any assignee may seek arbitration on an individual basis of any Claim asserted by you, whether in arbitration or any proceeding, including in a proceeding to collect a debt. You may seek arbitration on an individual basis of any Claim asserted against you, including in a proceeding to collect a debt.

\* \* \*

*Who can be a party?* Claims must be brought in the name of an individual person or entity and must proceed on an individual (non-class, non-representative) basis. The arbitrator will not award relief for or against anyone who is not a party. If you or we require arbitration of a Claim, neither you, we, nor any other person may pursue the Claim in arbitration as a class action, private attorney general action or other representative action, nor may such Claim be pursued on your or our behalf in any litigation in any court." (Emphases in original.)

The Card Agreement referenced variable annual percentage rates as of September 15, 2010, and listed a copyright date of 2010. The Card Agreement did not reference Darnell or Raney by name, signature, account number, address, or any other means.

¶ 9    In response to the motion to dismiss and to compel arbitration, Raney filed a motion to strike Burger's declaration, challenging the Card Agreement. Raney claimed that nothing in Burger's declaration established that the Card Agreement on which Midland Funding relied for

7

its motion to dismiss was associated with Raney's account, was ever received by Raney, or that Raney agreed to its terms.

¶ 10    Prior to the filing of the motion to dismiss, the parties had not engaged in discovery. On March 29, 2016, the parties entered a stipulation and agreed order regarding discovery, allowing for the depositions of Burger and Schubloom. The agreed order provided that Midland Funding's "agreement to this order or the stipulation cannot and will not be used against it for purposes of its Motion to Dismiss and Compel Arbitration, *i.e.*, [to determine] that Midland Funding *** has waived its right to compel arbitration based on its participation in discovery."

¶ 11    In a discovery deposition taken on May 4, 2016, Burger testified that, as director of operations for MCM, he supervised the media operations team, which was responsible for obtaining documentation for accounts and processing that documentation and uploading it to the document portal. Burger identified the Card Agreement attached to his declaration as Exhibit E and stated that "Citibank told us that this is the card agreement associated with that account." Burger acknowledged that no account number, name, or signature was included on the Card Agreement.

¶ 12    When questioned about the Darnell account, Burger testified that he had no personal knowledge regarding whether or not the Card Agreement was applicable and did not know if Darnell had ever seen or received the Card Agreement. Burger testified that he did not know if or when the Card Agreement was ever sent to Darnell and had not seen documentation that indicated that the Card Agreement had been sent to Darnell. Burger testified that he was not aware of any evidence that the Card Agreement was ever sent to Darnell or that she saw it. Likewise, Burger did not testify if or when the Card Agreement was mailed or otherwise communicated to Raney.

8

¶ 13    On June 15, 2016, Darnell and Raney executed affidavits stating that they had "never seen" the Card Agreement, had never agreed to the terms of the Card Agreement, and had never agreed to the arbitration provision in the Card Agreement. In discovery depositions taken on August 12, 2016, Raney testified that she could not recall having received the Card Agreement, and Darnell testified that she had not seen a credit card agreement applicable to her case and did not know if she had ever received updated terms and conditions. On July 18, 2016, the circuit court entered an order consolidating the Darnell and Raney cases.

¶ 14    On August 29, 2016, Burger executed a supplemental declaration in support of Midland Funding's motion to dismiss and to compel arbitration. Attached to Burger's supplemental declaration were Raney's credit card account statements from January 2010 through October 2013 and Darnell's statements from December 2009 through July 2014. Although not found in Darnell's account statements, a page titled "Important Changes to Your Account Terms" was included in Raney's November 2010 credit card account statement, a statement which referenced her name, account number, and address. This statement provided that certain changes were being made to Raney's account terms, which would take effect on December 7, 2010, and which would include an arbitration provision modification. This statement provided: "For more detailed information, please refer to the enclosed Notice of Change in Terms and Right to Opt Out." The statement itself did not include the language of the arbitration provision, and neither the Card Agreement nor another document titled "Notice of Change in Terms and Right to Opt Out" was attached to Raney's statement in the record.

¶ 15    On October 14, 2016, the circuit court entered its order denying Midland Funding's motion to dismiss and to compel arbitration. The circuit court found, *inter alia*, that Raney and Darnell were not subject to arbitration because there was no competent evidence that the Card

Agreement containing the arbitration provision applied to them. The circuit court noted that the Card Agreement did not include the signature of any party, did not include information that it related to Darnell's or Raney's account, and did not indicate that Darnell or Raney had received it or had agreed to its terms. The circuit court noted, however, that Darnell and Raney had executed sworn statements that they had not seen the Card Agreement nor agreed to its terms. The circuit court found that although Burger in his declaration had stated that the Card Agreement was applicable to Darnell and Raney, he testified at his deposition that he had no personal knowledge regarding whether or not the alleged Card Agreement was applicable. The circuit court further noted that Raney's credit card statement, which provided that revised terms were being distributed, did not identify the Card Agreement as the revised terms so distributed.

¶ 16    On November 14, 2016, Midland Funding filed a notice of interlocutory appeal pursuant to Illinois Supreme Court Rule 307(a)(1) (eff. Feb. 26, 2010).

¶ 17                              ANALYSIS

¶ 18    "Generally, the standard of review for a decision on a motion to compel arbitration is whether there was a showing sufficient to sustain the circuit court's order." *Keefe v. Allied Home Mortgage Corp.*, 393 Ill. App. 3d 226, 229 (2009). However, where the circuit court's decision is based on a legal analysis, the decision to deny the motion to compel arbitration is reviewable *de novo*. *Vassilkovska v. Woodfield Nissan, Inc.*, 358 Ill. App. 3d 20, 24 (2005). In this case, the circuit court did not hold an evidentiary hearing where it determined credibility issues but decided the issue as a matter of law. Thus, our review is *de novo*. See *id.*; see also *Peach v. CIM Insurance Corp.*, 352 Ill. App. 3d 691, 694 (2004) ("review of a trial court's construction of the arbitration agreement states a question of law that is subject to a *de novo* standard"); *Travis v. American Manufacturers Mutual Insurance Co.*, 335 Ill. App. 3d 1171, 1174 (2002) ("where the

10

trial court renders its decision without an evidentiary hearing and without findings on any factual issues, *de novo* review is appropriate"). We consider anew the pleadings, declarations, depositions, and exhibits on file to determine whether the circuit court's decision was correct. See generally *Jackson v. Graham*, 323 Ill. App. 3d 766, 779 (2001).

¶ 19 "The Uniform Arbitration Act *** (710 ILCS 5/1 *et seq.* (West 2000)) empowers courts, upon application of a party showing an agreement to arbitrate, to compel or stay court action pending arbitration. 710 ILCS 5/2 (West 2000)." *Vassilkovska*, 358 Ill. App. 3d at 24-25. Likewise, the Federal Arbitration Act provides that a court, upon being satisfied that an issue involved in a proceeding is subject to arbitration pursuant to a written arbitration agreement, shall on application stay the trial of the action. 9 U.S.C. § 3 (2012). However, "[w]hile arbitration is a favored method of dispute resolution, courts have consistently cautioned that an agreement to submit to arbitration is a matter of contract." *United Cable Television Corp. v. Northwest Illinois Cable Corp.*, 128 Ill. 2d 301, 306 (1989). Whether under federal rules or state law, there can be no forced arbitration without a valid contract to arbitrate. *Tortoriello v. Gerald Nissan of North Aurora, Inc.*, 379 Ill. App. 3d 214, 226 (2008); *Vassilkovska*, 358 Ill. App. 3d at 25; *Ervin v. Nokia, Inc.*, 349 Ill. App. 3d 508, 538 (2004); *Aste v. Metropolitan Life Insurance Co.*, 312 Ill. App. 3d 972, 975 (2000).

¶ 20 "An agreement to arbitrate is treated like any other contract." *Vassilkovska*, 358 Ill. App. 3d at 24. Accordingly, when deciding whether there is a valid agreement to arbitrate, courts apply state law principles that govern the formation of contracts. *Id.* at 25. "Our courts have held that the issuance of a credit card and cardholder agreement is a standing offer to extend credit that may be revoked at any time." *Portfolio Acquisitions, L.L.C. v. Feltman*, 391 Ill. App. 3d 642, 649 (2009); see also *Garber v. Harris Trust & Savings Bank*, 104 Ill. App. 3d 675, 679 (1982).

11

"When the cardholder makes a purchase, the bank advances funds to the merchant and this arrangement constitutes a loan between the bank and cardholder." *Portfolio Acquisitions, L.L.C.*, 391 Ill. App. 3d at 649. "Therefore, each time the credit card is used, a separate contract is formed between the cardholder and bank." *Id.*

¶ 21    "The issuance of a credit card is only an offer to extend credit; acceptance of the credit offer occurs each time a credit purchase is made by the cardholder." *Asset Acceptance, LLC v. Tyler*, 2012 IL App (1st) 093559, ¶ 47. "Consistent with the treatment of each credit card purchase as a separate offer and acceptance, modifications to credit card terms are binding between the parties when, after notice of the modifications, the cardholder uses his credit card." *Id.*

¶ 22    Accordingly "each time a credit card is used, a new contract exists between the parties according to the terms 'in effect' (*i.e.*, having been communicated to the defendant in a reasonable manner) at the time of the use." *Razor Capital v. Antaal*, 2012 IL App (2d) 110904, ¶ 35; see also *Garber*, 104 Ill. App. 3d at 678. Those terms might include a provision regarding arbitration. Submission of disputes to arbitration is completely dependent on the private will of the parties as embodied in whatever contract they may have entered into. *Asset Acceptance, LLC*, 2012 IL App (1st) 093559, ¶ 41. To compel arbitration as a term or modification of a credit card agreement, however, the card issuer must allege what the terms were at the time of each use, that those terms were communicated to the cardholder in a reasonable manner, and that the cardholder thereafter accepted those terms by using the card. See generally *Razor Capital*, 2012 IL App (2d) 110904, ¶ 35. "[M]odified terms of an agreement, once communicated to the cardholder, are deemed accepted when the card is used after the modifications." *Id.* ¶ 32.

12

¶ 23    In *Asset Acceptance, LLC*, the credit card holder contended that Asset Acceptance, as the credit card issuer, failed to present a *prima facie* case for confirmation of an arbitration award under section 13 of the Federal Arbitration Act (9 U.S.C. § 13 (2006)) because it failed to show that an arbitration agreement existed between the parties. *Asset Acceptance, LLC*, 2012 IL App (1st) 093559, ¶ 40. Asset Acceptance's motion to dismiss the cardholder's counterclaims attached two purported bank card documents, each of which contained an arbitration clause. *Id.* ¶ 43. However, neither document contained the cardholder's name or his credit card account number. *Id.* The appellate court found it problematic that the documents provided no evidence that they pertained to the cardholder's account, that the cardholder had received the papers, or that the cardholder had agreed to the terms set forth in the papers by making a credit purchase after he was mailed the attached papers. *Id.* ¶ 48. The appellate court noted that Illinois courts had deemed similar documents insufficient to establish a contract. See *id.*; *Velocity Investments, LLC v. Alston*, 397 Ill. App. 3d 296, 299 (2010) ("Cardmember Agreement and Disclosure Statement" was legally insufficient to collect on a credit card debt because the document offered no evidence that defendant agreed to be bound by the terms or that the terms applied to this particular account). The appellate court determined that the documents did not support the conclusion that the parties had entered into a contract to arbitrate their disputes. *Asset Acceptance, LLC*, 2012 IL App (1st) 093559, ¶ 48. Thus, the appellate court concluded that absent such an arbitration agreement, Asset Acceptance had failed to satisfy its burden to establish a *prima facie* case to confirm the arbitration award under section 13 of the Federal Arbitration Act. *Id.* ¶¶ 57-60.

¶ 24    In the present case, Midland Funding also did not demonstrate when or how the generic Card Agreement containing the arbitration provision pertained to Darnell or Raney or that it was

13

communicated to Darnell or Raney prior to subsequent credit card use. See *Razor Capital*, 2012 IL App (2d) 110904, ¶ 32 (in absence of allegations or affidavits explaining when and how generic agreement attached to the complaint was communicated to the defendant, via mail to defendant's most recent billing address or in another similar manner by which it would be reasonable to presume that defendant received it, and showing that the defendant used the card thereafter, thereby accepting the terms, the plaintiff cannot recover pursuant to those terms). As noted by the circuit court, the Card Agreement itself did not contain any signature, name, or account information and included no indication that it was mailed or in any way communicated to Darnell or Raney. Instead, Darnell and Raney executed sworn statements that they had never seen the Card Agreement nor agreed to its terms. Moreover, Burger did not attest or testify that the records he was allegedly responsible for maintaining and overseeing revealed that the Card Agreement's arbitration provision had been communicated to Darnell or Raney prior to subsequent credit card use. Burger, in his declaration, stated that "[t]he records produced by Citibank included the Card Agreement applicable to the" accounts; however, when deposed, Burger testified that he had no personal knowledge regarding whether or not the Card Agreement was applicable, he did not know and was unaware of any document or other evidence to determine if the arbitration provision had been communicated to Darnell, and he did not testify otherwise regarding Raney. Accordingly, Midland Funding failed to show that it had communicated the arbitration provision to Darnell or Raney as a modification of the agreement or that Darnell or Raney received the arbitration provision modification before charging additional funds and accepting it as a modification of their agreements. See *Asset Acceptance*, *LLC*, 2012 IL App (1st) 093559, ¶ 48.

14

¶ 25     Raney's November 2010 account statement referenced an enclosed "Notice of Change in Terms and Right to Opt Out" document that purportedly contained arbitration provision modifications. However, no such document was attached to Raney's account statement in the record. Although the Card Agreement, which was attached to Midland Funding's motion to dismiss and to compel arbitration, is also titled "Notice of Change in Terms and Right to Opt Out," the circuit court correctly concluded that there was no evidence that the generic Card Agreement attached to the motion had been enclosed with Raney's November 2010 account statement or that it was ever mailed or communicated to Darnell or Raney.

¶ 26     Midland Funding argues that the circuit court was not permitted to determine the validity of the Card Agreement or the arbitration provision therein. Midland Funding cites the arbitration provision in the Card Agreement that provides: "All Claims *** are subject to arbitration, including Claims regarding the application, enforceability, or interpretation of this Agreement and this arbitration provision." Midland Funding argues that the parties clearly and unmistakably contracted for a gateway issue, *i.e.*, the issue of arbitrability, and therefore, the circuit court was bound by the agreement and should have deferred the decision of this threshold matter to an arbitrator.

¶ 27     We have just held, however, that the parties did not clearly and unmistakably enter into an agreement regarding arbitration. Darnell and Raney challenged the arbitration clause itself and whether it was communicated to them as a modification of their credit card agreement. Having concluded that Midland Funding failed to demonstrate that Darnell or Raney was subject to the generic Card Agreement in the record, we decline to adopt Midland Funding's view that the Card Agreement's arbitration language controls and requires claims regarding its application to be subject to arbitration. In failing to demonstrate when or how the Card Agreement's

15

arbitration provisions were communicated to Raney or Darnell, Midland Funding failed to demonstrate that the agreement between it and Raney and the agreement between it and Darnell included the arbitration provisions found in the Card Agreement. Thus, we cannot conclude that the agreements governing the Darnell and Raney accounts contained mandatory arbitration clauses requiring the enforceability of the arbitration agreements to be decided by the arbitrator. See *In re Arbitration Between Teleserve Systems, Inc. & MCI Telecommunications Corp.*, 659 N.Y.S.2d 659, 664 (App. Div. 1997) ("under either Federal or New York law, to the extent that petitioner challenges the arbitration clauses themselves or their inclusion in the agreements, those challenges are for the court to determine"); see also *Donaldson, Lufkin & Jenrette Futures, Inc. v. Barr*, 124 Ill. 2d 435, 445 (1988) (party should not be compelled to go to the expense, trouble, and hazard to the arbitration process when he has not agreed to do so); *Bess v. DirecTV, Inc.*, 381 Ill. App. 3d 229, 237 (2008) ("independent claims specifically challenging the procedural unconscionability of an arbitration provision *** should be decided by the court rather than an arbitrator" (emphasis omitted)); *Tortoriello*, 379 Ill. App. 3d at 227 (issue of whether contract to arbitrate exists must be determined by the court, not an arbitrator).

¶ 28    In sum, we conclude that the circuit court properly determined that Midland Funding failed to demonstrate that it had communicated the arbitration provision to Darnell or Raney in order to modify their agreements. In light of our conclusion that Midland Funding failed to show that Darnell or Raney agreed to the arbitration provision in the Card Agreement, we need not address Midland Funding's remaining arguments on appeal.

¶ 29                                CONCLUSION

¶ 30    For the foregoing reasons, we affirm the judgment of the circuit court of St. Clair County.

16

¶ 31     Affirmed.

2018 IL App (5th) 160479

NO. 5-16-0479

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

| | | |
|---|---|---|
| MIDLAND FUNDING, LLC, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff and Counterdefendant-Appellant, | ) | St. Clair County. |
| | ) | |
| v. | ) | No. 15-L-442 |
| | ) | |
| TERESA RANEY and SHIRLEY DARNELL, | ) | Honorable |
| | ) | Christopher T. Kolker, |
| Defendants and Counterplaintiffs-Appellees. | ) | Judge, presiding. |

| | |
|---|---|
| **Opinion Filed:** | January 4, 2018 |

| | |
|---|---|
| **Justices:** | Honorable David K. Overstreet, J. |
| | Honorable John B. Barberis, P.J., and Honorable Richard P. Goldenhersh, J., Concur |

| | |
|---|---|
| **Attorneys for Appellant** | Theodore W. Seitz, Dykema Gossett PLLC, Capitol View, 201 Townsend Street, Suite 900, Lansing, MI 48933; Heather L. Kramer, Rosa M. Tumialán, Jennifer A. Warner, Dykema Gossett PLLC, 10 South Wacker Drive, Suite 2300, Chicago, IL 60606 |

| | |
|---|---|
| **Attorneys for Appellees** | David I. Cates, Chad M. Mooney, Cates Mahoney, LLC, 216 West Pointe Drive, Suite A, Swansea, IL 62226; Brendan M. Nester, Sean K. Cronin, Donovan Rose Nester, P.C., 201 South Illinois Street, Belleville, IL 62220 |